**HOPPES et, Plaintiffs, v. AMERICAN NATIONAL RED CROSS, et, Defendants.**

Common Pleas Court, Fayette County.

No. 21939. Decided September 6, 1955.

Richard P. Rankin, Washington C. H., for plaintiffs.
William M. Junk, Junk & Junk, Washington C. H., for American National Red Cross.
Charles S. Hire, Maddox & Hire, Washington C. H., for Nancy A. Hall.

## OPINION

By CASE, J.

This is an action for declaratory judgment seeking interpretation of three deeds of general warranty, three wills, and four mortgages: and a determination of the rights and interests of the children and grandchildren of Samuel B. Hoppes, deceased, the same being the two brothers and a sister and fourteen nieces and nephews of John Hinton Hoppes, deceased son of Samuel B. Hoppes; and the interests of two mortgages of John Hinton Hoppes, and of the American National Red Cross, a devisee under the will of John Hinton Hoppes. This matter was submitted upon the pleadings and an agreed statement of facts as hereinafter discussed and set forth.

## THE FIRST CAUSE OF ACTION

The first cause of action seeks determination of the rights and interests of the various parties with respect to 78 acres originally conveyed by Samuel B. Hoppes to John Hinton Hoppes by deed of general warranty dated December 23, 1912.

The factual situation of the first cause of action may be summarized as follows:

1912 Deed: Samuel B. deeded to John H. "for the term of his natural life, then to the heirs of his body their heirs and assigns forever."

1929 Deed: John H. reconveyed to Samuel B. in fee simple reciting the purpose thereof "being to vest the fee simple title to said premises in the grantee, Samuel B. Hoppes."

1934 Deed: Samuel B. reconveyed to John H. in fee simple.

1935: Samuel B. died testate but without specifically making mention or devise of said 78 acres and without including a residuary clause in said will.

1939, 1948, 1953, and 1954: John H. mortgaged said premises.

1954: John H. died testate, without issue; and without said mortgages being cancelled or released; and devising the net proceeds from the sale of said premises to The American National Red Cross.

No one of the parties to this action has contended that there is any ambiguity or uncertainty in the intent of the parties to the 1912 deed by reason of the language used therein. The granting and habendum clauses use identical words and phrasing—"for the term of his natural life, then to the heirs of his body their heirs and assigns forever"; and the warranty clause uses the phrase—"and the heirs of his body, their heirs, and assigns."

In **Long v. Olinger, 16 Abs 182,** the appellate court for Ohio Appeals, 2nd District, held:

"3. A deed from a father to a son who had no children, granting the premises to the grantee 'and the children of his body begotten and their heirs and assigns forever,' does not convey a fee simple to the son."

In the second headnote to **In Re Estate of Jones, 44 Abs 339,** the appellate court for Ohio Appeals, 3rd District, held:

"2. A granting clause in a deed executed in 1897 which recited that premises are conveyed to 'Thomas T. Jones and heirs of his body,' entitled the grantee as the first donee or tenant in tail to full enjoyment of all rights and subject to all the disabilities incident to that species of estates, and upon his death the right of entry accrued to the issue of his body and their estate immediately became an absolute estate in fee simple."

In **Pollock v. Speidel, 17 Oh St 439,** the Supreme Court of Ohio held:

"1. Where lands are conveyed by deed 'to A, their heirs of his body, and assigns, forever,' the grantee takes an estate tail.

"2. By force of the statute of this state limiting entailments, the issue of A takes the inheritance as an absolute estate in fee simple.

"3. The first donee in tail can not, in this state, by a sale and conveyance in fee simple, with covenants of warranty, bar the entail, or deprive his issue of the right of succession to the inheritance.

"4. Though the issue, in such case, take by descent, yet the tenant

in tail is not the **source** of their title; they take, **per formam doni,** from the person who first created the estate, and are therefore not estopped by the deed of the tenant in tail."

It is undisputed that John Hinton Hoppes was unmarried and without issue on December 23, 1912, that these two conditions continued unchanged throughout his life-time, and that he died on October 22, 1954, without issue..

In the interpretation of deeds, it is a well established rule of law that the intention of the parties shall govern unless the language used therein renders it imposible to give that intention effect. As to the intention of the parties to said deed of 1912, this Court must be guided by the language contained therein for all of the parties thereto are now deceased.

**Sec. 8622 GC,** was in force and effect on December 23, 1912, and contained the following provisions:

"No estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this state, shall be given or granted, by deed or will, to any person or persons but such as are in being, or to the immediate issue or descendants of such as are in being at the time of making such deed or will; and **all estates given in tail shall be and remain an absolute estate in fee simple to the issue of the first donee in tail.**" (Emphasis added by the Court.)

In **16 O. Jur. 415, 416,** we find the following analysis and comment upon §8622 GC:

"No. 34. * * * It is well established that this statute did not change the nature of the estate of the first donee in tail from an inheritable estate to an estate for life merely. In other words, **the statute does not come into operation until the estate passess by the first donee in tail and reaches the issue of such donee.** In an early case, it was asserted that the statute recognized the first donee in tail as holding an estate for life only as tenant in tail. But this statement has been construed merely to mean that the donee holding as tenant in tail cannot convey an estate that will endure beyond his own life." (Emphasis added by the Court.)

Therefore, upon application of established statutory and case law of Ohio to the clear and unambiguous language of the 1912 deed, it must be concluded that the force and effect thereof was to entitle the grantee, John Hinton Hoppes, as the first donee or tenant in tail to full enjoyment of all rights and subject to all the disabilities incident to a fee tail estate.

Coming next to consider the force and effect of the 1929 deed, whereby the first donee in tail purported to reconvey said 78 acres in fee simple to the donor who created said fee tail estate, it becomes necessary to examine those rules of law applicable to the powers of the first donee in tail to transfer any interest in said land.

In Vol. 1, Hausser's Ohio Practice, Real Property, 206, 207, we find the following:

"No. 451. **Power of First Holder to Transfer—Same as Owner of Fee Simple Absolute Estate, but Subject to Defeasance.** The donee of the estate in fee tail preserved for the lifetime of the first taker only, has

both the privilege and the power to create any interest in the land which could be created by a person having an estate in fee simple absolute. However, any interest so created may be defeated, upon the death of the donee in tail, by the persons entitled after the donee under the limitation which created the estate.

"This characteristic holds true whether the first donee in tail purports to convey an estate in fee simple absolute, or an interest given as security in the form of a mortgage, or an interest to be held in trust, and whether the conveyance is voluntary or involuntary (Restatement, Property. Vol. I, No. 89.)."

"Example:

"1. A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B and the heirs of his body.' B makes an otherwise effective mortgage of Blackacre 'to C and his heirs.' B marries D and has a son E. D dies, B dies. E acquires an estate in fee simple absolute in Blackacre and may limit C's mortgage interest in Blackacre to the estate of B, which ended on his death (Wolf v. Stout, 9 Dec. Repr. 231, 11 Wkly. Law Bull. 236—Dist. Ct., Pickaway Cty., 1884)."

"No. 452.—Defeasibility of Estate of First Donee

"When the first donee of the estate in fee tail transfers any interest, such interest of course does not last longer than the duration specified for it in the conveyance which created it. **If the donee in tail purports to convey an interest that is to continue beyond his death, the interest 'does not automatically terminate with the death of the conveyor, but, after such death it becomes defeasible by the persons entitled after the conveyor.'** (Restatement, Property, Vol. I, No. 89) (Emphasis added by the Court.)"

"The persons who are entitled to contest the right of the transferee of the first donee in tail to hold his interest after the death of the first donee in tail, include the specified issue of the first donee in tail. the remaindermen in the original conveyance, persons in whose favor an executory interest have been validly limited by the original conveyance, and the reversioner who made the original conveyance. (Restatement, Property, Vol. I, No. 89.)"

"454.—Characteristics of the Estate Transferred

"Until the persons entitled to take after the death of the first donee in tail act to assert their rights, the interest created by a conveyance made by the first donee in tail, for the period of its continuance, has the characteristics of the type of interest in the land purported to be created thereby. (Restatement, Property, Vol. I, No. 89)

"The above discussion as to the inability of the first donee in tail to transfer interests continuing beyond his lifetime against the wishes of the persons entitled to take after his death, is indicative of the law of Connecticut and Ohio. * * *

"Neither by a conveyance in fee simple, a mortgage, a trust, or a voluntary or involuntary transfer may the first donee in tail bar the entail or deprive his issue of the right of succession to inheritance. In **Pollock v. Speidel, 27 Oh St 86 at 95 (1875)**, the Supreme Court explained that the first donee in tail has no power to bar the entail or to cut off the heirs of his body from their right of succession to the inheritance

at his death, and that upon his death a right of entry accrues to the issue of his body, whose estate becomes, by force of the statute, an absolute estate in fee simple."

After diligent search and examination of the statutory and case law of Ohio, this Court is of the opinion that the rules of law hereinabove set forth and discussed by "Hausser" are consistent with and correctly state the law of Ohio with respect to estates in fee tail for single lifetime only. Therefore, this Court will apply those rules in reaching its determination of the issues raised by the first cause of action herein.

The 1929 deed purported to convey an interest that was to continue beyond the death of John Hinton Hoppes who was the conveyor and first donee in tail. Therefore, the fee simple title so conveyed did not automatically terminate with the death of the conveyor, John Hinton Hoppes, but, after his death, the fee simple title so conveyed merely became defeasible by any person or persons entitled to take succession to the inheritance created by the original deed of 1912; and, until any person or persons entitled to take after the death of John Hinton Hoppes act to assert such right, the fee simple interest created by the deed of 1929 continues in force and effect unless contested and defeated by such action.

Is any one or more of the parties to this action such person or persons entitled to contest and defeat the fee simple title to the 78 acres conveyed by the 1929 deed? We think not, for it is apparent from the undisputed facts that no one of the parties to this action is the issue of the first donee in tail, or is a remainderman named in the original deed of 1912, or is a person in whose favor an executory interest had been validly limited by the original conveyance, or is the reversioner who made the original deed of 1912.

Since no remainderman was named in the deed of 1912, and since said deed contained no terms concerning such executory interest, then there were only two classes of persons who could have contested and defeated the fee simple title so conveyed by the donee in tail through the 1929 deed of general warranty, namely the issue of the first donee in tail and the reversioner. And, since it is admitted that the donee in tail, John Hinton Hoppes, lived and died without any issue of his body, and that the reversioner, Samuel B. Hoppes, was the transferee of the fee simple conveyed by the 1929 deed, and, subsequent thereto, reconveyed said 78 acres in fee simple to the said John Hinton Hoppes by warranty deed dated November 10, 1934, and then died testate in 1935 without specifically making mention or devise of said premises; it is clearly apparent that no person living at the time of the death of John Hinton Hoppes, October 22, 1954, was entitled to contest the rights acquired by the transferee of the first donee in tail through said deed of 1929, or the rights acquired by the successive transferees through the respective warranty deed of 1934 and the mortgage deeds of 1939, 1948, 1953 and 1954.

Therefore, it must be concluded that the respective interests created by each of said warranty and mortgage deeds are such estate and interest as the respective conveyances purported to create.

In the light of all of the foregoing findings of law and fact, this Court **further finds:**

1. That John Hinton Hoppes died seized of a fee simple estate in and to said 78 acres of land;

2. That said mortgage deed by John Hinton Hoppes to Effie Palmer, Trustee of the Good Hope Baptist Church Fund, under the date of March 29, 1939 (Fayette County Mortgage Record 38, Page 541) is a valid and subsisting lien against said real estate;

3. That said respective mortgage deeds by John Hinton Hoppes to The Columbus Production Credit Association, under the dates of September 21, 1948, May 7, 1953, and July 21, 1954 (M. R. 50, Page 317; M. R. 60, Page 9; M. R. 61, Page 319) are valid and subsisting liens against said real estate; and

4. That said real estate should be sold and the proceeds therefrom applied to the payment of debts as provided by law and the remaining net proceeds distributed to The American National Red Cross pursuant to the terms and provisions of said last will and testament of John Hinton Hoppes, deceased.

### THE SECOND CAUSE OF ACTION

The second cause of action seeks determination of the rights and interests of the various parties with respect to 50 acres specifically devised to defendants, Pauline H. Zurface, Glen Hoppes and Beulah H McFadden, by Item Four of the last will and testament of their uncle, John Hinton Hoppes, deceased; and the issue raised therein is summarized in plaintiffs' petition as follows:

"Your plaintiffs as such Executors are in doubt as to the proper construction of Item Four of said will with regard to the premises above described for the reason that the terms and provisions of said Item relating to the manner in which the said John Hinton Hoppes supposed that he had acquired title thereto were not actually fulfilled and therefore said Item may fail and thereby the devise may lapse and pass under the residuary clause thereof."

The factual situation of the second cause of action may be summarized as follows:

**Acquisition of 50 acres by Nancy Hoppes:** Nancy Hoppes, mother of John Hinton Hoppes, acquired a fee simple estate in said premises by deed dated February 19, 1907 (Fayette County Deed Record 34, Page 76).

**50 acres devised by her will:** Nancy Hoppes died testate, May 25. 1951, and by Item II of her will devised said premises as follows:

"Item II. All the property, real and personal, of every kind and description, wheresoever situate, which I may own or have the right to dispose of at the time of my decease, I give, bequeath and devise to my son, John Hinton Hoppes, Route 1, Washington Court House, Fayette County, Ohio, for and during his natural lifetime, and after his death I give and devise all of my said property, both real and personal to the brothers and sister of said John Hinton Hoppes, namely Charles H. Hoppes, Samuel J. Hoppes, and Nancy Ann Hoppes, their heirs and assigns, equally, share and share alike."

**Identity of Devisees named in Item II:** The Nancy Ann Hoppes named in Item II of said will and the Nancy A. Hall named defendant in this action are one and the same person. The Charles H. Hoppes and

Samuel J. Hoppes named in Item II of said will and the C. H. Hoppes and S. J. Hoppes named plaintiffs in this action are one and the same persons.

**1952 Deed:** By warranty deed, dated April 1, 1952, Nancy A. Hall, unmarried; Samuel J. Hoppes and his wife; and Charles H. Hoppes and his wife; conveyed their respective interests to John Hinton Hoppes (Fayette County Deed Record 84, Page 596).

**Date of Execution:** The last will and testament of John Hinton Hoppes was executed September 7, 1946.

**50 acres devised by John Hinton Hoppes:** The fourth item of his will reads as follows:

"FOURTH, whereas my mother, Nancy Hoppes, has made a will devising to me fifty acres of land in Perry Township, Fayette County, Ohio; in the event that I shall survive her and inherit from her said land, I give and devise said land to Pauline H. Zurface, Glen Hoppes and Beulah McFadden, children of my brother Samuel J. Hoppes, in fee simple, share and share alike."

It is undisputed that the mother, Nancy Hoppes, died testate in 1951 seized of fee simple title to and being the sole owner of said 50 acres, as described and set forth in plaintiffs' petition. It is also undisputed that, under the terms and provisions of her will, John Hinton Hoppes was devised a life estate only in said premises, and that the remainder was specifically devised to Nancy A. Hall, a named defendant herein, and to C. H. Hoppes and S. J. Hoppes, named individually as plaintiffs herein; and that said remaindermen, by their 1952 deed of general warranty, conveyed all of said remainder to the life tenant, John Hinton Hoppes, who thereby became the owner in fee simple of said 50 acres on April 1, 1952.

All parties to this action admit that John Hinton Hoppes died testate on October 22, 1954, and that his will was executed on September 7, 1946. It is also admitted that Nancy Hoppes, his mother, died testate on May 25, 1951, and that her will was executed November 1, 1939 Therefore, it is apparent from the explanatory language contained in item Fourth of his will that John Hinton Hoppes knew, at the time of making his will, that his mother had made a will devising said 50 acres to him: and that, in the event he inherited said premises under the provisions of her will, he intended to devise said premises to the two nieces and nephew specifically named in the fourth item of his will.

The sole issue remaining to be determined under this second cause of action is whether the words—"* * * in the event I shall survive her and inherit from her said land * * *"—are words of limitation as used in the fourth item of said will. This Court is of the opinion that they are not words of limitation.

In 41 O. Jur. 590, 591, 593, 594 and 595, the interpretation of wills is commented upon as follows:

"No. 467. In General.—The cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testator, which has been variously declared to be the paramount rule, the primary guide, the sole guide, the guiding spirit, and the polar star. This intention will be followed unless the testator attempts to make disposition con-

trary to some rule of law or public policy. To that end all rules of construction are to be followed only as they are seen to be aids to a determination of that intention, and no rule, however sanctioned by usage, may be applied to a thwarting of the testator's intention. If however, the testator attempts to effect that which the law forbids, his will must yield to the rules of law, as, for example, where he attempts to disregard the rule against perpetuities, or in any sense break down or violate the fixed principles of property."

It is clearly apparent and must be conceded that the testator in the case at bar did not attempt to make disposition contrary to some rule of law or public policy; nor did said testator attempt to effect that which the law forbids, or to break down or violate any fixed principles of property.

In **41 O. Jur. 595 to 600,** it is stated:

"**No. 468. Language Indicating Intention.**—The intention of a testator must be ascertained from the language used in the will, as applied to the subject-matter and read in the light of surrounding circumstances at the time of the execution thereof, and not with reference to the circumstances at the time of the death of the testator, except in so far as the latter are connected with the former. Even the circumstances surrounding the testator at the time of its execution can effect its construction only when it appears that they were known to the testator at that time.

"No deduction may be made from circumstances that annihilate the written terms of the will.

"In considering the surrounding circumstances, a court should, as far as possible, try and put itself in the position of the testator at the time of making the will. The ties which connect the testator with his legatees, the affection subsisting between them. the motives which may reasonably be supposed to operate with him and to influence him in the disposition of his property, are all entitled to consideration.

"While, as shown in the preceding section, the purpose of construction as applied to will is unquestionably to arrive at the intention of the testator, that intention is not that which existed in the mind of the testator, but that which is expressed by the language of the will. The question always before the mind of the court must be not what should the testator have done, but what did he do, and what did he mean by the words which he actually employed. If language of will is plain, and the meaning obvious, the court cannot qualify or control the language by conjecture or doubt arising from extraneous facts. The testator must be presumed to have meant what he said. * * *"

It is obvious that, at the time of making said will, John Hinton Hoppes knew he was not the owner of said premises which were then owned by his mother; that he anticipated if he survived his mother, becoming the sole owner thereof through a will which he knew she had made; and that, in the event he did become the owner and died seized thereof, he desired and intended to devise said 50 acres to the two nieces and the nephew so designated and named in the fourth item of his will.

His mother died on May 25, 1951, and by her will devised only a life

estate to John Hinton Hoppes in said premises, with the remainder therein specifically devised to his two brothers and his sister. Within less than one year of his mother's death, John Hinton Hoppes had acquired the fee simple estate in said premises through a deed of general warranty executed and delivered by said remaindermen on April 1, 1952. He died October 22, 1954, seized of such estate which by the terms of his will was expressly devised in fee simple to his two nieces and nephew named and designated in the fourth item thereof.

Therefore, it must be concluded that the language which preceded said devise in the fourth item of his will was merely descriptive and explanatory of his anticipated ownership of said 50 acres; and that said language was not used with the intent or purpose to limit or nullify said devise in the event he should acquire ownership of said premises by any means other than through his mother's will.

In the light of the foregoing findings of law and fact, this Court further finds:

1. That such portion of the fourth item of said will which recites—"whereas my mother, Nancy Hoppes, has made a will devising to me fifty acres of land in Perry Township, Fayette County, Ohio;"—is merely descriptive and explanatory and does not in any way limit or nullify the devise thereinafter set forth.

2. That such portion of the fourth item of said will which recites—"in the event I shall survive her and inherit from her said land,"—is merely explanatory of an anticipated ownership of said premises and was not intended to limit or nullify the devise thereinafter set forth where the testator acquired only a life estate through his mother's will but, prior to his death, became seized of the fee simple estate in said premises through a deed of general warranty from the remaindermen named in his mother's will.

3. That such portion of the fourth item of said will which recites—"I give and devise said land to Pauline H. Zurface, Glen Hoppes and Beulah McFadden, children of my brother Samuel J. Hoppes, in fee simple, share and share alike."—constitutes a valid devise of such estate even though preceded by certain language of description and explanation herein above set forth.

## THE THIRD CAUSE OF ACTION

The third cause of action as amended seeks construction and interpretation of that portion of Item II of the will of Samuel B. Hoppes which reads as follows:

"* * * After the death of my said wife, Nancy Hoppes, I give and devise the Real Estate situate in the Township of Perry, County of Fayette and State of Ohio, consisting of two farms, one farm containing about 100 acres and the other farm containing about 155 acres to my son, John Hinton Hoppes, during his natural life. After the death of my said son, John Hinton Hoppes, I give and devise said Real Estate to my grandchildren, their heirs and assigns forever absolutely and in fee simple, each to share equally."

It is noted that said 155 acres was one and the same premises described as the "FIRST TRACT" in the 1912 deed of general warranty which conveyed same to John Hinton Hoppes "for the term of his nat-

ural life, then to the heirs of his body their heirs and assigns forever"; and was also the same premises described as the "FIRST TRACT" in the 1929 deed of general warranty purporting to reconvey same to the original grantor, Samuel B. Hoppes.

It is the opinion of this Court that such reconveyance was effective but subject to defeasance by any issue of the body of John Hinton Hoppes, who lived and died without issue, as hereinbefore discussed and set forth in this Court's determination of the first cause of action herein. Therefore, it must be concluded that Item II of the will of Samuel B. Hoppes constituted a valid devise of a fee simple estate in said 155 acres upon the death of John Hinton Hoppes without issue.

It is admitted that fourteen of the defendants named herein are all of the living children of C. H. Hoppes and S. J. Hoppes, the plaintiffs herein who are the sons of Samuel B. Hoppes, the testator; and that defendant, Nancy A. Hall, a daughter of said testator, has had no children. It is also admitted that said fourteen grandchildren were living at the time of the death of Samuel B. Hoppes. But, at the trial, it was developed and stipulated that Ronald J. Hoppes, a minor and unmarried son of S. J. Hoppes, was living at said testator's death and died intestate in 1945 survived by his parents who are still living.

The major issue raised by this third cause of action is whether the estate in remainder devised by said Item II vested in said grandchildren upon the death of said testator (1935) or at the later death of his son, John Hinton Hoppes (1954).

In **Ohio Natl. Bank v. Boone, 139 Oh St 361, 22 OO 414, 40 N. E. 2d.** 149, it was held:

"1. Ordinarily, a will speaks as of the death of the testator.

"2. The law favors the vesting of estates at the earliest possible moment, and a remainder after a life estate vests in the remainderman at the death of the testator, in the absence of a clearly expressed intention to postpone the vesting to some future time.

"3. To the frequently stated general rule that if there is no gift in a will but by a direction to pay at a future time or event, the legacy will not vest in the beneficiary until the time for payment arrives, is the well recognized exception that where the postponement of payment is for the convenience of the estate, as the appropriation of the subject-matter of the legacy to the use and benefit of another for life, the ultimate interest will vest at the death of the testator. Under such exception, the postponement of payment relates merely to the enjoyment of the legacy and is not attached to the substance thereof.

"4. Where a testator wills a part of his estate to another, directing that she shall receive therefrom a stipulated sum annually for and during her natural life and further provides that after her death the unconsumed portion shall be paid to 'my heirs, share and share alike,' the remainder in such portion of the estate as may be unconsumed by the life beneficiary vests at the testator's death in such person or persons as then answer the description of testator's heirs under the statute of descent and distribution in force at such time, unless a contrary design on the part of the testator is plainly apparent."

In arriving at its decision in that case, Judge Zimmerman stated in part as follows, beinning at page 365:

"* * * The criterion of a vested remainder is a present capacity to take. So, when there is a person in being who would have the right to possession immediately upon the determination of the particular intervening estate, the remainder is vested. **In re Hutchinson, 120 Oh St 542, 549, 166 N. E., 687, 690.** It is not the uncertainty of the actual enjoyment, but the uncertainty of the right to enjoyment that makes a remainder contingent. **Smith v. Block, 29 Oh St 488, 497.** The law favors the vesting of estate at the earliest possible moment, and it is well settled in Ohio that a remainder after a life estate vests in the remainderman at the death of the testator, unless an intention to postpone the vesting to some future time is clearly expressed in the will. **Bolton v. Bank, 50 Oh St 290; Tax Commission v. Oswald, Exrs., 109 Oh St 36, 141 N. E., 678.**

"The devise or bequest of an estate for life, followed by a direction to divide or distribute such estate among others after the death of the life beneficiary, does not defer the time of vesting unless an opposite intention plainly appears. **Linton v. Laycock, 33 Oh St 128; Collier v. Grimesy, 36 Oh St 17; Bolton v Bank, supra; Johnson v. Johnson, 51 Oh St 446, 38 N. E., 61.** In the cases of **Sinton v. Boyd, 19 Oh St 30, 2 Am. Rep., 369; Richey, Exr., v. Johnson, 30 Oh St 288;** and **Hamilton v. Rodgers 38 Oh St 242,** words of survivorship or other compelling language was present evidencing a well defined purpose on the part of the testator that the remainder should not vest until the time of division or distribution arrived."

It must be conceded that there are no compelling words or language present in Item II of said will which would evidence any intention on the part of said testator to postpone the vesting of such remainder interests until the death of John Hinton Hoppes. And it is admitted that no additional grandchildren came into being between the time of said testator's death and the subsequent death of John Hinton Hoppes. It is admitted, however, that of the fifteen granchildren who survived the testator only fourteen of them survived the life estate of John Hinton Hoppes.

In **P. S. Bank & Tr. Co. v. Nash, 75 Oh Ap 493, 31 OO 290, 62 N. E. 2d 736,** the Court of Appeals for Hamilton County held:

"2. In the absence of clear and unambiguous indications of a contrary intention disclosed in a will, the members of a class described in a will are to be ascertained as of the death of the testator."

Upon applying the foregoing rules of law to the undisputed facts in the case at bar, it must be concluded that the remainder interests in the two farms so devised by Item II of the will of Samuel B. Hoppes immediately vested in his fifteen grandchildren who survived him.

With respect to that portion of such remainder interests which so vested in Ronald J. Hoppes immediately upon the death of his grandfather, Samuel B. Hoppes, it becomes necessary to next determine its disposition by reason of said grandchild's death in 1945 prior to the expiration of the intervening life estates of his grandmother, Nancy Hoppes, and his uncle, John Hinton Hoppes.

**Sec. 10512-4 GC,** was in full force and effect at the death of Samuel B. Hoppes, the testator, and at the death of Ronald J. Hoppes, the re-

mainderman who died prior to the expiration of said intervening life estates; and said statute provides as follows:

"Remainders, whether vested or contingent, executory interests, and other expectant estates are descendible, devisable and alienable in the same manner as estates in possession."

Therefore, by reason of the aforesaid statutory provisions, that portion of such estate in remainder, as was vested in Ronald J. Hoppes immediately upon the death of Samuel B. Hoppes (1935), was descendible at the death of Ronald J. Hoppes (1945), an unmarried minor who died intestate and without issue; and such estate in remainder therefore passed by operation of law according to the pertinent provisions of §10503-4 GC, which were then in full force and effect and provided as follows:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:

"5. If there be no spouse and no children, or their lineal descendants, to the parents of such intestate equally, or the survivor of such parents."

For it is now established that the death of the owner of a vested future interest before his interest took effect in possession, does not cause such interest to fail unless the will creating the remainder interest so provides. Everhard v. Brown, 75 Oh Ap 451, 31 OO 268, 62 N. E. 2d 901. It must be conceded that the language of the will of Samuel B. Hoppes created such estate in remainder and contained no intention, express or implied, which would cause such interest to fail upon the death of said grandchild; for the testator expressly devised such estate in remainder "to my grandchildren, their heirs and assigns forever, absolutely and in fee simple, each to share equally." It is also noted that said will contained no residuary clause.

In the light of the foregoing findings of law and fact, this Court further finds:

1. That the fee simple title to said 155 acre farm, as vested in Samuel B. Hoppes by said 1929 deed of general warranty from the first donee in tail, John Hinton Hoppes, remained uncontested and undefeated after the death of said John Hinton Hoppes without issue.

2. That Item II of said will of Samuel B. Hoppes was a valid devise of all of the right, title and interest of the said testator in and to the 100 acre farm and the 155 acre farm therein described.

3. That the estate in remainder, so devised to said testator's grandchildren by Item II of said will, vested immediately upon the death of said testator in fifteen of said testator's grandchildren who were all of his grandchildren then in being.

4. That each of the following named persons became vested with an undivided one-fifteenth interest in said estate in remainder to said 100 acres and 155 acres as the grandchildren in being at the death of said testator, Samuel B. Hoppes:—Pauline H. Zurface, R. Glen Hoppes, Beulah McFadden, Naomi Priest, Winifred Dellinger, Lawrence Hoppes, Wilbur Hoppes, Wendell Hoppes, Merrill Hoppes, Ronald J. Hoppes, Helen Whitmer, Herbert Hoppes, Samuel I. Hoppes, Maynard Hoppes and Floyd Hoppes.

5. That no additional grandchildren were born after the death of Samuel B. Hoppes.

6. That Ronald J. Hoppes, one of the above named grandchildren, died intestate in 1945, being then unmarried and without issue; and that his undivided one-fifteenth interest of said estate in remainder passed to and vested in his parents, Samuel J. Hoppes and Lelia Hoppes, by operation of law; and that the remaining fourteen grandchildren survived the said John Hinton Hoppes.

7. That the intervening life estates created by Item II of said will terminated with the death of John Hinton Hoppes on October 22, 1954; and that by reason thereof each of the fourteen grandchildren then living became vested with an undivided one-fifteenth fee simple estate in and to the aforesaid farms of 100 acres and 155 acres; and that the aforesaid parents of Ronald J. Hoppes, deceased, also survived John Hinton Hoppes and became vested with the remaining undivided one-fifteenth fee simple estate therein.

The Court further finds that counsel for plaintiffs should prepare an entry in conformity with each and all of the findings hereinbefore made with respect to each of the causes of action set forth in plaintiffs' petition, and with appropriate notation therein of exceptions on behalf of each and all of the parties plaintiff and defendant, and thereupon submit same within five (5) days to opposing counsel and to this court for approval.