**GUIDA et, Plaintiffs, v. THOMPSON et, Defendants.**

Common Pleas Court, Tuscarawas County.

No. 32630.  Decided April Term, 1957.

150

Van Blanchard, Coshocton, for plaintiffs Victor J. Guida et.
Raymond C. Rice, Leslie R. Early, New Philadelphia, for defendants Wm. Thompson et.

### OPINION

By FISHER, J.

This is an action for a declaratory judgment for the interpretation of four deeds, a mortgage, lease and mechanics lien involving real property consisting of about 82.50 acres in Tuscarawas County, Ohio, and determining the rights and interests of the various parties and claimants therein.

In order to properly understand the various legal complications involved, the factual situation should first be summarized. In 1949 John M. Thompson executed a warranty deed for the real property above

mentioned to Carl M. Thompson and Mary L. Thompson, and Raymond T. Thompson and Lois P. Thompson, and the heirs of their bodies, with the following significant recitations: "Know All Men by These Presents, That **John M. Thompson, widower, the Grantor, for the consideration of One Dollar and other valuable considerations—($1.00)** received to **my** full satisfaction of **Carl M. Thompson and Mary L. Thompson and Raymond T. Thompson and Lois P. Thompson, and the heirs of their bodies,** the Grantees, do give, grant, bargain, sell and convey unto the said Grantees, **their** heirs the following described premises, situated in the **United States Military District,** County of **Tuscarawas** and State of Ohio:" * * * "**leaving hereby conveyed 82.50 acres.**" * * * "**It is agreed that Carl M. Thompson and Mary L. Thompson are to occupy the east side of the farm and Raymond T. and Lois P. Thompson are to occupy the west side of the farm hereby conveyed, the line between the two parts of the farm to be agreed upon between all the parties of interest. Deed to John M. Thompson recorded in Vol. 214, page 391, of the Tuscarawas County deed records.** be the same more or less, but subject to all legal highways. TO HAVE AND TO HOLD the above granted and bargained premises, with the appurtenances thereof, unto the said grantees, **their** heirs forever. And **I,** the said Grantor, do for **myself** and my heirs, executors and administrators, covenant with the said Grantees, **their** heirs, that at and until the ensealing of these presents, I am well seized of the above described premises, as a good and indefeasible estate in FEE SIMPLE, and have good right to bargain and sell the same in manner and form as above written, and that the same are free from all incumbrances whatsoever, and that I will WARRANT AND DEFEND said premises with the appurtenances thereunto belonging to the said Grantees, **their** heirs and, against all lawful claims and demands whatsoever. In Witness Whereof, I have hereunto set **my** hand, the **3rd** day of **November,** in the year of our Lord one thousand nine hundred and **forty-nine.** **John M. Thompson**" (signed) * * *." (Emphasizing throughout deeds ours, indicating typewritten words on printed form; and signature of John M. Thompson being in handwriting.) The deed was prepared on a printed form filled in by typewriter.

In 1953 the said John M. Thompson executed a quitclaim deed to the said Carl, Raymond, Mary and Lois Thompson for the same premises with the following significant recitations: "have given, granted, remised, released and forever quit claim and do by these presents absolutely give, grant, remise, release and forever quit claim unto the said grantees their heirs and assigns forever, all such right and title as I, the said grantor, have or ought to have in and to the following described piece or parcel of land, situated in the Township of Mill, County of Tuscarawas and State of Ohio:

"(Same description as refered to in Exhibit 'B', supra)

"The purpose of this deed is to correct a warranty deed, 30847, dated November 3, 1949, recorded in Vol. 307, p. 367, Deed Records, Tuscarawas County, Ohio, wherein the scrivener of said deed inadvertently added after the names of the grantees the following words, 'and the heirs of their bodies,' when it was the intention of the grantor to convey

fee simple title to the grantees named herein without any reservation or restriction.

"To have and to hold the premises aforesaid with the appurtenances thereunto belonging to the said grantees, their heirs and assigns, so that neither the said grantor nor his heirs nor any other person claiming title through or under them, shall or will hereafter claim or demand any right or title to the premises or any part thereof; but they and everyone of them shall by these presents be excluded and forever barred."

In 1954 the said Carl, Mary, Raymond and Lois Thompson executed a warranty deed to Victor J. Guida and Rose J. Guida conveying "unto the said grantees their heirs and assigns forever" 5.018 acres out of the aforesaid 82.50 acre tract.

On March 12, 1955, the Guidas executed a mortgage to the Gnadenhutten Bank on a part of said 5.018 acre tract, and other premises, to secure the payment of $15,000.00. This mortgage was recorded March 29, 1955.

On March 1, 1955, the Guidas executed a lease to the Cities Service Oil Company on a part of said 5.018 acre tract, which lease was recorded May 6, 1955. The lessors subsequently assigned their interest in this lease to Central National Bank of Cleveland to secure an obligation for $13,000.00 dated May 3, 1955.

On June 8, 1955, Furbay Electric Supply Company perfected a mechanics lien on a part of said premises last described as security for $966.82, recorded July 12, 1955.

On October 15, 1955, the said Carl, Mary, Raymond and Lois Thompson executed a standard fee simple deed to Joseph Guida and Mary Guida for the balance of said 82.50 acre tract, which was recorded October 21, 1955.

The said John M. Thompson died on the 2nd day of March, 1955, leaving surviving him two sons, Carl M. Thompson and Raymond T. Thompson and other children named in the petition, and also children of the said Carl M. Thompson and Mary L. Thompson, and of Raymond T. Thompson and Lois P. Thompson, also named in the petition.

The issues are made up by the petition of the plaintiffs, Victor and Rose Guida, Carl and Mary Thompson, Raymond and Lois Thompson and Joseph and Mary Guida, seeking to have the respective interests acquired by them to be declared estates in fee simple; the answers of William Thompson, Charles Thompson, Harry Thompson, Edward P. Thompson and Betty Garner, brothers and sisters of said Carl M. Thompson and Raymond T. Thompson, seeking to have the original grant by the 1949 deed declared an estate in fee tail; the answer of James S. Patrick, guardian ad litem and trustee for born and unborn issue of the bodies of Carl M. Thompson and Mary L. Thompson, husband and wife, and Raymond T. Thompson and Lois P. Thompson, husband and wife, asking the Court to protect their interests in the suit; the answer of Furbay Electric Supply Company, Central National Bank of Cleveland, and the Gnadenhutten Bank setting up their respective interests and asking that they be protected.

It is the contention of the petitioners (1) that notwithstanding the 1953 quitclaim deed from the original donor, John M. Thompson, to the

original donees, Carl, Mary, Raymond and Lois Thompson, the effect of the 1949 deed was to grant and convey to said donees a fee simple estate in the 82.50 acre tract described therein; and, (2) if the 1949 deed does not have that effect, the estate tail vested by it in said donees was enlarged into an estate in fee simple by the 1953 deed.

The contestants contend that the 1949 deed had the effect of conveying a fee tail estate from John M. Thompson to the said Carl M. Thompson and Mary L. Thompson, Raymond T. Thompson and Lois P. Thompson, donees in tail, and the heirs of their bodies; and that the 1953 quitclaim or corrective deed did not have the effect of enlarging the fee tail estate created by the 1949 deed into an estate in fee simple.

The primary question therefore involved in this suit is whether by the deeds of John M. Thompson, the original donor, executed by him in 1949 and 1953, the grantees, Carl M. Thompson and Mary L. Thompson (husband and wife), and Raymond T. Thompson and Lois P. Thompson (husband and wife), became vested with an estate in fee simple or with an estate in fee tail in the real property described in said deeds. To understand the question better it should be pointed out that the 1953 quit-claim deed, according to the recitations therein, was for the purpose of "correcting" the 1949 deed by making it appear that the words "and the heirs of their bodies" were inadvertently inserted therein when allegedly it was the intention of the grantor to convey to said grantees a fee simple title in said premises.

Oral evidence was offered by some of the defendants in an attempt to throw light upon the intention of the parties when the 1949 deed was executed, the value of which is doubtful, as the Court, in construing this instrument and its legal effect must be guided by fundamental rules of construction recognized by our courts, the first of which is that the intention of the parties as expressed in the deeds shall be given effect, if at all possible. In other words, as stated in section 81 on deeds, **17 O. Jur. (2d):** "At law, a deed is conclusively presumed to express the intention of the parties, and the court must seek for the real meaning intended to be expressed by the language used in the deed, * * * the question being not what the parties meant to say, but the meaning of what they did say." (**Larwill v. Farrelly, 8 Oh Ap 356.**) Furthermore, deeds are to be construed as a whole in arriving at the intention of the parties, that is, each part must be construed with reference to every other part thereof. (**17 O. Jur., [2d], Section 82.**) It is universally conceded in English and American Jurisprudence that an absolute fee simple estate is the entire interest in the land, with infinite duration, and inheritable by the collateral as well as the lineal heirs of the person having such estate; whereas an estate in fee tail is one restricted in its course of descent at law to certain heirs, namely, those of the body. The first matter for consideration is, therefore, whether the 1949 deed conveyed a fee simple or a fee tail estate. If that can be determined from the language of the instrument itself, resort to the oral evidence in the case will be unnecessary; and if the 1949 deed conveyed a fee simple estate, then it would also be unnecessary to consider the effect of the 1953 deed.

The word "heirs" was necessary to create a fee simple estate by

deed at common law, but in 1925 a statute was enacted in Ohio, §5301.02 R. C., declaring that words of inheritance or succession are not necessary to create an estate in fee simple and that every grant or conveyance shall be construed to pass the whole estate or interest unless it clearly appears by the deed that the grantor intended to convey a less estate. (20 O. Jur. [2d] 237.) The usual form of conveyance in fee simple is a grant "to A and his heirs and assigns forever," and one of the incidents of such an estate is the power of unlimited alienation. However, in a fee tail estate the course of descent is usually restricted to the heirs of the donee's body. The form most generally used is "to A and the heirs of his body." These latter estates are of common law origin, having derived their existence from the statute de donis which had the effect of making them inalienable where the limitation was to some particular heir or class of issue of the grantee instead of to the general heirs. If there were no heirs of the class to whom the estate is limited, the property reverted to the donor. (19 Am. Jur. 508-509; **Pollock v. Speidel, 17 Oh St 439.**) If the donee in tail died leaving heirs of the class to whom the estate was limited by the grant, as heirs of the body, it passed to them in fee simple by operation of law. (Sec. 2131.08 R. C.) Thus, where lands were conveyed by deed "to A, the heirs of his body, and assigns, forever," A took an estate tail. (Pollock v. Speidel, supra; **Dungan v. Kline, 81 Oh St 371.**)

A fee tail must not, however, be confused with a life estate. Although its endurance is only for the life of the donee in tail, it has certain attributes of a fee simple estate that a life estate does not have, chief among which is that the fee is vested by the grant in the first donee in tail and passes from him upon his death to the immediate heirs of his body in fee simple; whereas in life estates the fee is vested in the remainderman and not in the life tenant.

Parole evidence being inadmissible to contradict or change the legal effect of a deed (17 O. Jur. [2d] 240), in determining the nature of the estate conveyed by such instrument resort must be made, if possible to the operative words used therein by the donor. While such words are necessary, it is sufficient if they are found in any part of the deed, and are so used as to express the intention of the donor. (6 Thompson, page 417.) The phrase in the 1949 deed "received to my full satisfaction of Carl M. Thompson and Mary L. Thompson and Raymond T. Thompson and Lois P. Thompson and the heirs of their bodies, the grantees, do give, grant, bargain, sell and convey unto the said grantees, their heirs," with the next two words "and assigns" stricken out, contains the attributes of a fee tail grant. Although the habendum and warranty clauses of the deed use the words "their heirs" with the words "and assigns" stricken out, they can be reconciled with the granting clause as indicating "heirs of their bodies." In 17 O. Jur. (2d) page 205 it is stated: "The habendum clause may make definite a granting clause as to the time for which the grant is made, or explain or qualify the term 'heirs' in the granting clause so as to limit the grant to the issue of the grantee * * *."

The very fact that the words "and assigns" are stricken out of the granting, habendum and warranty clauses in the deed as above indi-

cated, shows an intention to restrict the alienation of the estate by the grantees so that their heirs cannot be deprived of their inheritance. This is consistent with a fee tail grant. In re Jones estate, decided by the Third District Court of Appeals in 1943, 44 Abs 339, where the granting clause in the deed recited that the premises were conveyed to "Thomas T. Jones and heirs of his body," and the habendum clause recited that it was for the use of "Thomas T. Jones, his heirs and assigns forever," and in the warranty clause it was recited "Thomas T. Jones and his heirs of his body," the Court, in applying the well known rule of construction that typewritten phrases are given effect over printed phrases if there is any inconsistency between them, held that the grant entitled Thomas T. Jones as the first tenant in tail to full enjoyment of all the rights and subject to all the disabilities incident to that species of estates, and upon his death the right of entry accrued to the issue of his body with an estate absolute in fee simple. There is nothing in the policy of the law to discourage estates in fee tail other than the court rule that where the language of the instrument conveys equally well two different estates, that construction will be placed upon it which will confer an estate in fee simple in preference to an estate tail. (Darling v. Hippel, 12 O. C. D. 754.) The language of the 1949 deed is definitely inconsistent with a fee simple grant.

Another argument advanced by plaintiffs, that by the form of the grant it would appear that the heirs of the bodies of Carl M. Thompson and Mary L. Thompson and Raymond T. Thompson and Lois P. Thompson were intended by the donor to have a present estate in and to the premises. That such was not the intention of the donor is borne out by the agreement clause of the deed, to-wit: "It is agreed that Carl M. Thompson and Mary L. Thompson are to occupy the east side of the farm and Raymond T. Thompson and Lois P. Thompson are to occupy the west side of the farm hereby conveyed, the line between the two parts of the farm to be agreed upon between all the parties of interest." It is a well settled proposition of law in American and English Jurisprudence that the words "heirs of their bodies" do not refer to specific grantees or purchasers under an instrument, but that their interest is the bare possibility of eventually becoming heirs, the maxim being "Nemo est haeres viventis" (No one is the heir of a living person). (Dungan v. Kline, 81 Oh St 371, 384; Pollock v. Speidel, 27 Oh St 86.) Such heirs have no immediate estate as they take by inheritance, not by purchase. (20 O. Jur. (2d) 284-285.)

Applying these rules of construction it is the view of the Court without necessity of resorting to oral evidence that the 1949 deed in question vested in Carl M. Thompson and Mary L. Thompson and Raymond T. Thompson and Lois P. Thompson an estate tail in the 82.50 acres therein conveyed. The question then arises whether the 1953 quitclaim deed from the original donor, John M. Thompson, to these donees in tail had the effect of enlarging their estate tail into a fee simple estate and thereby enabling them to defeat the inheritance of their issue to the real property conveyed.

To determine the effect of the 1953 quitclaim deed requires an exam-

ination of statutory law and its interpretation by the courts. It is apparent from the language of this deed that it was the intent of the donor, John M. Thompson, to vest an estate in fee simple to the property conveyed in Charles M. Thompson and Mary L. Thompson, and Raymond T. Thompson and Lois P. Thompson, but the question arising is whether the donor, after his execution of the 1949 deed, had such an estate or interest in the property conveyed that he could do this. Sec. 2131.08 R. C., provides: "All estates given in tail, by deed or will, in lands or tenements lying within this state, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail. * * *" This statute abrogated the common law rule under the statute de donis, although generally speaking many of the common law attributes were retained through interpretation: Thus in **Pollock v. Speidel, 17 Oh St 439,** the court stated: "We agree with counsel for the defendant that the words 'heirs of his body' used in the conveyance to James Pollock, are words of limitation, not of purchase; and that his issue take, not as purchasers, but by descent; but this is to be understood as meaning that the issue takes the estate 'as an estate of inheritance and as being of the prescribed line of issue or inheritance, and not by direct descent from his immediate ancestor; since he takes, per formam doni from the person who first created the estate.' " This statement of the law is a little better clarified in the fourth syllabus which states: "Though the issue, in such case, take by descent, yet the tenant in tail is not the source of their title; they take, per formam doni, from the person who first created the estate, and are therefore not estopped by the deed of the tenant in tail."

Under authority of the Pollock decision, supra, which has never been overruled, the first tenant in tail cannot by a sale and conveyance bar the en-tail or deprive his issue of the right of succession to the inheritance. In **Hoppes v. Red Cross, 71 Abs 259,** it was held:

"The donee of the estate in fee tail preserved for the lifetime of the first taker only, has both the privilege and the power to create any interest in the land which could be created by a person having an estate in fee simple absolute. However, any interest so created may be defeated, upon the death of the donee in tail, by the persons entitled after the donee under the limitation which created the estate. This characteristic holds true whether the first donee in tail purports to convey an estate in fee simple absolute, or an interest given as security in the form of a mortgage, or an interest to be held in trust, and whether the conveyance is voluntary or involuntary." (Restatement, Property, Vol. I, section 89; Hausser on Real Property, page 206.) It seems apparent from these authorities that the characteristics of the title of the tenants in tail are such that they cannot convey an estate in the property which will endure beyond their lifetime if their issue assert their rights.

It is contended by plaintiffs that the effect of the 1953 deed is to combine the reversion in expectancy of the donor with the "condition" of the fee tail created by the 1949 deed and thereby invest the first donees in tail with an estate in fee simple absolute. Such a result could have been accomplished under the fee simple conditional estate practice recognized under the common law prior to the statute de donis. Thus,

in a grant to A and the heirs of his body, upon the birth of issue to A as contemplated by the grant the condition was discharged and the estate was supposed to become absolute like a fee simple in the grantee. To abrogate this practice which enabled the donee in tail to bar his own issue, the statute de donis was enacted in England in 1285. (19 Am. Jur. 498.) The effect of this statute was to abolish fee simple conditional estates, and the interest of the grantee thereafter became an estate tail or fee tail, which became inalienable in the hands of the donee in tail.

While the possibility of reversion on failure of issue remaining in the donor is not an estate, there is authority to the effect that the donor can release it to the person holding the intermediate estate, the first donee in tail. But this does not have the effect of converting the estate tail into an estate in fee simple in the hands of the first donee in tail so as to enable him to alien it in fee simple to a third person and thereby defeat the heirs of his body from acquiring it by descent upon his death. In **Harkness v. Corning, 24 Oh St 427,** it was held that: "It was intended by the statute to restrict the entailment to the immediate issue of such donee, and on the determination of his interest in the estate, and of such rights as the law annexed to it while held by him, to enlarge the estate tail in the hands of such issue into an absolute estate in fee simple." The same effect was intended by the statute de donis of making estates inalienable where the limitation was to some particular heir or class of issue of the grantee instead of to the general heirs. (19 Am. Jur. 508.) The only probable effect of an original donor's release of his reversion expectancy to the donee in tail would be to defeat donor's possibility of reversion in event the donee should die without issue and thereby vest the estate in the donee's general heirs in fee simple.

Plaintiffs cite the Vine Street Congregational Church opinion by Judge Gorman of Cincinnati, 20 Ohio Dec. 573, as authority supporting their position. It must be borne in mind, however, that the Vine Street Church case involved an estate upon condition subsequent, and that Judge Gorman's opinion, able and exhaustive as it is, deals almost exclusively with conditional estates and not with fee tail estates. In the third syllabus of this decision it is stated: "The grantor in a deed which conveys a fee simple title subject to the happening of a condition (which might never happen) whereby title was to revert to grantor or his heirs or assigns on the happening of such condition, has an interest or right in such title that he can release to the owner of the conditional fee who is in possession before condition broken; and the ordinary form of quitclaim deed is sufficient to effect such release." We do not see where this decision has any application whatsoever to the issues in the instant case, as estates on condition are subject to be defeated upon the happening or failure of some subsequent condition or event. The condition must be annexed to the conveyance and is usually considered valid if not repugnant to the grant, or if not against public policy. (20 O. Jur. 350; 19 Am. Jur. 522.) No such provision or conditions appear in the 1949 deed. In a fee tail estate the possibility of reverter to the original donor is that the donee in tail die without issue. In the instant case the tenants in tail are living and have issue.

Do Carl M. Thompson and Mary L. Thompson, and Raymond T. Thompson and Lois P. Thompson, the donees in tail, have such an interest in the property that notwithstanding the possibility of reverter was released to them by the 1953 deed of John M. Thompson, the original donor, they can alienate the premises in fee simple so as to defeat the possibility of inheritance of their issue? This is the crux of the matter. As just pointed out, under the common law fee simple conditional practice before the statute de donis, that could have been accomplished, but we have yet to find a single modern authority to the effect that in Ohio an estate tail can be enlarged into an estate in fee simple absolute through the release by the original donor of his possibility of reversion to the donee in tail. The trend of Ohio authorities seems to be otherwise.

There have been various methods by which entailments were barred or destroyed in the past because the courts did not regard entailments with much favor; but as fast as the courts devised disentailing methods, the legislative authorities would legislate against them. In 31 C. J. S. 36 are stated some of the methods employed at one time or another in various jurisdictions to defeat entailments, chief among which were: (1) Common recoveries and fines, not recognized in Ohio, and (2) provisions in the instrument creating the entail, which are recognized in Ohio, and practically all jurisdictions.

A common recovery is defined in 19 Am. Jur., page 510 as "a conveyance on record, a fictitious proceeding invented to give a tenant in tail an absolute power to dispose of his estate in fee simple." It is unknown in Ohio. (20 O. Jur. [2d], 293.) A near approach to it is the attempt of the original donor in these proceedings to vest an estate in fee simple in the tenants in tail by his quitclaim deed of 1953, and the subsequent conveyances by the donees in tail to the Guidas, but can the original donor change the form of the gift once it has vested as an estate tail by a previous transfer when no estate remains in him? By the form of the gift the donees took the entire estate for themselves and the heirs of their bodies. The donor had nothing left which he could grant —only a possibility of reverter which could be released to the donees in tail, but which could not defeat the inheritance of their issue.

Notwithstanding the fact that the fictitious proceedings of fines and common recovery resorted to at common law to defeat entailments have never been recognized in Ohio, the donor may, nevertheless, reserve that power in the entailment instrument. In 19 Am. Jur., page 511, it is stated: "In the absence of statute a conveyance in fee by a tenant in tail can affect his interest only and is ineffective to bar the issue in tail or affect the remainder expectant on the estate in tail. The donor of the estate in tail, however, in the instrument creating the estate, may empower the donee in tail to convey the fee simple and thus bar the entail. The donor may also reserve to himself the power to convey and bar the entail." Subsequently the same statement appears in annotated cases 1912 B on Page 57. It is significant that these statements of the law are taken from Ohio decisions, notably Aiken v. Spillman, 4 O. N. P. 297, 6 Ohio Dec. 409, and Yoder v. Ford, 10 Ohio Dec. reprint 475. It is self-evident therefore that had John M. Thompson, the original

donor, reserved this power in the 1949 entailment deed, the 1953 deed would have effectively barred the entail, but no such power was reserved.

Just what application §2131.06 R. C., may have in such a situation has never been determined by our courts. This section is comparatively new, having been adopted January 1, 1932, and provides: "An expectant estate cannot be defeated or barred by any transfer or other act of the owner of the intermediate or precedent estate, nor by any destruction of such precedent estate by disseizen, forfeiture, surrender, merger, or otherwise; but an expectant estate may be defeated in any manner which the party creating such estate, in the creation thereof, has provided for or authorized. An expectant estate thus liable to be defeated shall not, on that ground, be adjudged void in its creation." It is not essential that this Court determine whether or not this statute is applicable, but inasmuch as the interest of the issue of the donees in tail has the characteristics of the expectancy of an heir, the statute would appear to be applicable. It is interesting to note, therefore, that this statute embodies the judicial principles declared by our courts in the Aiken and Yoder cases, supra. Thus, it appears that the interest of the donees in tail is such that they cannot convey an estate in the property that will endure beyond their own lives. (20 O. Jur. [2d] 288.) In Hausser's Real Property, at page 263 it is stated: "The inability of the first donee in tail to transfer interests continuing beyond his lifetime against the wishes of the persons entitled to take after his death, is indicative of the law of Connecticut and Ohio." However, this does not mean that the donees in tail cannot alienate their interests in the property during their own lifetimes. In Vol. I, Restatement of Law of Property, Section 89, it is provided as follows: "A person who has an estate in fee tail preserved as such for a single lifetime only, has both the privilege and the power to create any interest in the land so held which could be created by a person having an estate in fee simple absolute therein, except that the interest so created may be defeated upon the death of the conveyor by the persons entitled after such conveyor, under the form of limitation which created the estate in fee tail." The "persons entitled after the conveyor" within the meaning of that phrase as used in Section 89 supra, are the issue of the first donees in tail. Such interests created by the donees in tail do not, however, automatically terminate with their death, but, after their death become defeasible by the persons entitled thereto in fee simple, which are their issue. (See Section 95, Vol. I, Restatement on Property.)

What are the rights of creditors? The rule laid down in Section 90 (b) Restatement, supra, is that when a debtor has no interest in land except an estate in fee tail reserved as such for a single lifetime only, a creditor cannot secure in satisfaction of his claim an indefeasible interest in such land for longer than the lifetime of the debtor. The interest in such land so obtained includes, for the duration of the debtor's life, the privilege to make all uses of the land which the debtor himself could lawfully make. The "debtor" above referred to is the tenant in tail, but it stands to reason that those holding under the tenant in tail have no greater interest in the land than a tenant could convey and that the rule operates upon them in like manner.

This does not mean that Carl M. Thompson and Mary L. Thompson, and Raymond T. Thompson and Lois P. Thompson, the tenants in tail, or those claiming under them, have no immediate remedy should they desire to exercise it during the lifetime of the tenants in tail. We have a disentailment statute which authorizes courts of common pleas to order the sale of such estates upon proper application when satisfied that the sale would be beneficial and would do no substantial injury to the heirs in tail. The statute referred to is §5303.21 R. C., which provides: "In an action by the tenant in tail or for life, or by the grantee or devisee of a qualified or conditional fee, or, of any other qualified, conditional or determinable interest, or by a person claiming under such tenant, grantee, or devisee, or by the trustee or beneficiaries, if the estate is held in trust, courts of common pleas may authorize the sale of any estate, whether it was created by will, deed, or contract, or came by descent, when satisfied that such sale would be for the benefit of the person holding the first and present estate, interest, or use, and do no substantial injury to the heirs in tail, or others in expectancy, succession, reversion, or remainder. This section does not extend to estates in dower." It is to be noted that this is an old statute, having been in effect in 1867 when the Pollock v. Speidel case, supra, was decided, and with respect to which the Supreme Court in that case had this to say: "Various provisions in this act evince the sedulous care with which the rights of those who are entitled to the inheritance, after the first donee in tail or for life, have been guarded; and the whole act evidently proceeds on the idea that, without such legislation, the first donee in tail could not sell and convey the estate in fee simple." It is therefore apparent that by statutory fiat and its interpretation by the Supreme Court of this state the donees in tail herein were without legal authority to make conveyances of the premises described in the 1949 and 1953 deeds which would endure beyond their own lives except by compliance with said statutory provisions.

It is the conclusion of the Court that:

(1) The 1949 deed from John M. Thompson to Carl M. Thompson and Mary L. Thompson, and Raymond T. Thompson and Lois P. Thompson, conveyed a fee tail estate.

(2) The 1953 deed did not have the effect of enlarging this fee tail estate into an estate in fee simple.

(3) All persons holding under Carl M. Thompson and Mary L. Thompson, and Raymond T. Thompson and Lois P. Thompson, the tenants in tail, have no greater interest or estate than such tenants themselves have, and are therefore limited in their enjoyment or possession of said premises to the lifetimes of said tenants in tail.

(4) Upon the death of said tenants in tail their issue become vested with an absolute estate in fee simple in the premises.

(5) Upon the decease of said tenants their issue are not estopped by any act of the tenants in tail in alienating said premises.

(6) The lessees and creditors have no greater rights than the tenants in tail themselves have.

(7) Disentailment may be effected only by proceedings under §5303.21 R. C.