STEPHENSON ET AL. V. SEDAM ET AL.

OMMISSION OF WORD HEIRS IN A DEED, EFFECT.

Where land is conveyed by deed and the word "heirs" is omitted such grantees will only take a life estate, and upon their death, the grantor if living, or his heirs, devisees or assigns in case of his death would be the owners in fee of the whole estate, free and discharged from any claim arising under such deed, saving of course, any legal demand against the grantor arising out of any lease executed to and by him.

APPEAL from the Court of Common Pleas of Hamilton county.

†Dismissed in Supreme Court by failure to file printed record, 4 News, 337.

5 C. C. 39

SMITH, J.

We had thought it probable from what took place in this case after the hearing, that some agreement might be arrived at by the parties themselves, but learning that there is no prospect of this, we state the conclusions at which we have arrived, on the questions presented to us.

The action is one brought by the executors of Stephenson against Sedam, to recover ground rent claimed to be due from him, on a perpetual lease granted by them to him, and to sell the interest of Sedam therein, to pay the same.

They make parties defendant the wife of Sedam, and other persons claiming to hold an interest in the premises under him. They allege the execution of this lease to Sedam on January 29, 1880, in due form. That it was also duly executed by Sedam who thereby agreed to pay them as rent therefor $800.00 each year, in quarterly installments of $200.00, for which they were to have the first lien on the property. Sedam was also to pay all taxes and assessments on the premises. That he has failed to pay several installments of rent when due, and they are still unpaid, and they pray for the sale of said leasehold and improvements to pay the same. Sedam filed an answer and cross-petition. He first denies that the plaintiffs leased the land in question, to to him. He says the transaction was simply a loan of money, by them, him. Second, he says, by way of cross-petition, that in January, 1880, he was the owner in fee simple of the property, which was then worth at least $30,000.00. It was encumbered to the amount of $12,000.00, which he wished to pay. He applied to plaintiffs for a loan of $12,300.00. That they agreed to loan him that sum, at $6\frac{1}{2}$ per cent. interest, but to avoid taxes, wanted the papers fixed in the shape of a deed and lease; that he supposed that this was the same as a mortgage, and agreed to it, leaving the form of the papers to be fixed by the executors and their attorney. That they were executed as part of the same transaction. and were simply to secure a loan of that sum with $6\frac{1}{2}$ per cent. interest, That he did not know when he executed the papers, that the lease contained no privilege of purchase. He says he did not convey the property to plaintiffs for $12,300.00. There was no purchase by them, and no sale by him. He says the plaintiffs had no power to take such a deed. For these reasons he asks that the deed, as such, be cancelled. In his third defense he alleges that at the time of the transaction he was in possession of the premises which then, and ever since he has rented for $2,500.00 per annum. He asks that the arrangement be held simply a mortgage to secure the $12,300.00 and interest, and offers to pay the amount of principal and interest, due thereon. Mrs. Sedam also files an answer and cross-petition, setting up several of the same matters stated in the answer of her husband, and alleging that her signature to the deed was obtained by the representations of the agent and attorney of plaintiffs, that it was only a mortgage to secure the loan of $12,300.00; that she had no knowledge that it purported to convey the property, and she prays that the deed be set aside, on the payment of the debt and interest, as fraudulent as against her.

On these pleadings, (the plaintiffs have stricken out their claim for a personal judgment) and the evidence submitted, the case was heard in the court of common pleas, and a decree entered in favor of the plaintiffs, finding that the deed in question was a valid one, and conveyed an absolute fee simple to the plaintiffs, and that Sedam only had a perpetual lease of said premises as set out therein—and finding the amount

due for rent, and that if it were not paid in thirty days, the leasehold should be sold.

From this decree Sedam appealed t the circuit court, and the case was heard by us on the same pleadings and the evidence submitted, the defendants having offered evidence tending to show that the allegations of their answers were true, and the defendants, evidence in opposition thereto. After we had arrived at a conclusion as to what was shown by the evidence on this point, we were surprised to find that no reply to either of these answers, or cross-petitions, was ever filed by the plaintiffs. As the execution of the lease was admitted, the defendant sought to avoid the decree asked for, by setting up a parol contract that the transaction was in fact but a mortgage, and not a simple deed and lease, and the wife averred that she was not bound by the deed, and asked its cancellation on the ground that it had been fraudulently procured from her. In the absence of a denial of these facts by plaintiffs, there is much doubt whether it is not an allegation of new matter, and unless denied to be considered admitted. We, however, state the conclusions which we have reached from the evidence, looking at the case as if the allegations of these answers and cross-petitions had been denied by a reply.

We think the evidence shows the following state of fact: For twenty years before January 27, 1880, Sedam had owned this property in fee simple. It was however encumbered with mortgage liens to the amount of about $9,000.00 or $10,000.00, and the taxes, interest and penalties thereon, were near $2,000.00, and these demands against Sedam were being pressed for payment. The real estate was worth at least $25,000.00, and perhaps $30,000.00.

Sedam was trying to borrow $12,000 to take up these liens, by giving a mortgage upon it, but for some cause, was unable to do so. He employed Mead, a real estate agent and money broker, to try and procure him a loan on the property. Mead notified him after trying to do so, that he had failed, but that he could get the money at a less rate on a ground rent. Sedam authorized him to see if he could, and Mead applied to Mr. Coles, the attorney of plaintiffs. Mr. Coles informed him that plaintiffs would not loan him the money, but that if Sedam could convey the property to the plaintiffs, they would furnish him with $12,-300.00 on which they would execute to him a perpetual lease, Sedam to pay a yearly rental therefor of $800.00 in quarterly installments of $200 each, and also to pay the taxes on the property. Sedam agreed to this, and accordingly, on the 27th day of January, 1880, a deed was prepared by Mr. Coles and signed by Mr. Sedam and then taken by Mr. Coles and Layton, (the business agent of Sedam) to the house of Mrs. Sedam, (she then being parted from her husband) and it was there signed and acknowledged by her—Layton and Coles being the witnesses to the signatures of both, Sedam and wife, and Mr. Coles as notary public taking the acknowledgment of both of them thereto. The lease (owing to the absence of one of the plaintiffs) was not executed and acknowledged by plaintiffs and Sedam until January 29, 1880, but the two were delivered at the same time and formed but one transaction, and the $12,300.00 was then paid to Sedam, or as directed by him. Not a word seems to have been said by any of the parties as to the value of the property thus conveyed.

We think it probable that both Sedam and wife at the execution of the papers supposed that it was a transaction more in the nature of a loan than of the conveyance of the property to the plaintiffs absolutely. It would be very strange if they had made so improvident a contract as

it appears on its face, if they had fully understood it. That a man of any intelligence would thus convey property worth $25,000.00 to $35,-000.00 for a consideration of $12,300.00, even if he was to receive a permanent lease on it, the rental of which was equivalent (saying nothing of the taxes to be paid thereon) to 6½ per cent. on the amount received, is hard to be credited. And yet we are satisfied from the evidence that the transaction is just as the plaintiffs intended, and understood it was to be, and that these terms were made known to both of the grantors in the deed before they executed it, and that no misrepresentation of any kind was made to either by the plaintiffs or their attorney. Sedam, as he says, may have entertained the idea, that he might pay off the debt sometime, but how he could so do if he gave the slightest attention to the terms of the two papers executed by him, it is difficult to see. If he had read them, he must have been aware, that neither of them gave to him a privilege of repurchasing the property, at any time. On the contrary, the most casual examination of the lease itself (a printed form for the use of these plaintiffs in such cases) would show on its face, a provision, giving the lessee the privilege of repurchase, in this case erased by red lines drawn across it, but still plainly visible, and in this condition it is accepted by Sedam, and so far as the evidence shows no complaint was ever made by him till the institution of this suit. In this state of the case we think he must be held to have had knowledge that the instrument he received was only a conveyance to him of a perpetual leasehold of this property, without any right on his part, ever to obtain the title again by a re-payment of the $12,300.00, but that he, his heirs and assigns were entitled to it so long as they performed the stipulations of his contract, and that this, under the lease, was his only interest in the property. In the negotiation between the parties, there does not seem to have been any talk whatever of a repayment of the money and a re-conveyance of the property, and as shown by the evidence of Layton, the agent of Sedam, he saw the peculiarity of the transaction and asked his principal if he was entirely satisfied to have it in that shape, and though his attention was thus called to the subject, he took no steps to have a right to purchase put into the contract.

If therefore the plaintiffs at the time of the execution of this lease to Sedam, had acquired from him a fee simple title in form, he would not be able to say that the evidence we have heard shows any parol agreement between them and Sedam, that it was to be only a security for a loan; but that the transaction would be just what the plaintiffs claim it to be.

The claim is made however in this court, for the first time as we understand, that the deed so executed did not convey the fee simple estate—and this raises an interesting and important question. Though the point was suggested on the trial of the case, we have not had the benefit of any suggestions from the counsel for plaintiffs on the subject.

The deed in question recites that Sedam and wife, in consideration of $12,300.00, to them paid by Henry W. Stephenson and others (naming them) surviving executors of the estate of William Stephenson, deceased, "do hereby grant, bargain, sell and convey to the said Henry W. Stephenson (and others naming them,) surviving executors as aforesaid, their successors and assigns forever," the real estate in question. This is followed by the statement, "and all of the estate, title and interest of the said grantors, and of each of them, either in law or in equity, of, in and to said premises." Then follows the *habendum* clause to the

grantees "surviving executors as aforesaid, their successors and assigns forever," and the covenants of warranty by Sedam in the usual form, to the plaintiffs "surviving executors as aforesaid, their successors and as-- signs forever." That is, neither in the granting clause, in the *habendum* clause, or in the covenants, is the word "heirs" used in connection with the grantees. Now, if we are to be governed in this case by what for a great many years has been considered in England and in this country a well settled rule of construction of such language in a deed, it seems quite clear to us that a fee simple was not conveyed to these grantees. That the most that could properly be claimed is, that they took an estate therein for their joint lives, and the lives of the survivors or survivor of them. And at the death of such survivor, Sedam, if living or, his heirs, devisees or assigns in case of his death, would be the owner in fee of the whole estate, free and discharged from any claim arising under such deed, saving, of course, any legal demand against Sedam arising out of the lease executed to and by him. This general rule of the law is, viz: and I quote from Walker's Am. Law, "that to create a fee simple estate by deed, the word 'heirs' is indispensable, except in the grant to corporations, where the word 'successors' though not essential, is usually substituted. Accordingly if in creating this estate by deed, the word 'heirs' happens to be omitted, however clear may be the intention to create a fee, the grantee will take only a life estate. "And as stated in First Washburn on Real Prop., vol: 1 section 53, p. 71: "So a deed to one and his successors, or to one, his successors and assigns, is a life estate only." He also says that no synonym will supply its place, and that no circumlocution has ever been held to create a fee. It is true as stated in Washburn (same page) there are some seeming exceptions to this rule—"one being, that where land is clearly conveyed in fee by one deed, and the deed by which it is again granted, instead of being to the grantee and his heirs, be to him as fully as it was granted in the former deed, referring to it, it is only borrowing the words of limitation from the former deed, and conveys a fee."

Another is, "that in the case of a conveyance in trust, the trustee will take the legal estate in fee, though limited to him without the word heirs, if the trust which he has to execute be, to the *cestui que* trust and his heirs. The words of limitation and inheritence in such case, are connected with the estate of the *cestui que* trust, but are held to relate to the legal estate in the trustee, because without such a construction the trustee would not be able to execute the trust, and that only, even though it were to him and his heirs, and the trust was for life only, in the *cestui que* trust. Thus a grant to A in trust, to sell, carries a fee."

If it be claimed that under the last paragraph quoted, this deed may be held to pass a fee, we would answer that in our opinion such would not be the case. Because, in the first place, no trust is created by the deed, and there is no conveyance to the grantees in trust. It is true that the grantees are described as "surviving executors of the estate of William Stephenson," but this is rather a description of the persons of the grantees, than a conveyance to them of any trust to be executed by them. It may be true that as between them and the beneficiaries under the will of the testator, they might be held as trustees, but that is a matter with which Sedam and his wife had nothing to do. There is no pretense that it was a part of the arrangement that the land was to be conveyed to them by Sedam, on any trust, or that he had any knowledge of the purpose of the purchase by them. He simply acceded to their proposition to convey the

land to them, (describing them as surviving executors), their successors, and assigns forever—and he might well rely on the doctrine of the law, that he thus conveyed to them but a life estate in the property.

Unless the doctrine of the common law is not now the law of Ohio, we would be of the opinion that this deed only conveyed a life estate. And the doubt as to this question arises in our minds in view of a decision of the supreme court in 44 Ohio States 269—*Brown* v. *National Bank.*

In that case the court recognize the general rule to which we have referred. In the syllabus the court says :

"1. By a well established general rule, the use of the word 'heirs' or other appropriate words of perpetuity in a mortgage, or other deed of conveyance of lands, is essential to pass a fee simple estate; but this is not an inflexible rule of law admitting of no exception or qualification.

"2. When the language employed in, and the recitals and conditions of a mortgage plainly evidence an intention to pass the entire estate of the mortgagor, as security for the mortgage debt, and the express provisions of the instrument cannot otherwise be carried into effect, it will be construed to pass such estate, although the word 'heirs' or other formal word of perpetuity is not employed."

It must be conceded we think that this holding, to some extent at least, modifies the rule of the common law to which we have referred. The latter holds that as a rule "the use of the word 'heirs' is indispensable to create a fee simple by deed, and that no matter how clear the intention may be to create the fee, if it is not used, only a life estate will pass," and that no synonym will supply its place, and that no circumlocution has ever been held sufficient to create a fee. While the decision under consideration seems to hold that if the word "heirs" be not used, and the intention otherwise clearly appears to pass the entire estate of the mortgagor, it will have this effect.

In that case the question arose on a mortgage on Ohio land, executed in the state or Indiana, on a form which by the laws of that state, viz: by the use of the words "mortgage and warrant" is operative to pass a fee simple estate in the lands mortgaged. It did not use the word "heirs" in connection with the mortgage. It did not provide for the collection of the notes secured by it, "by foreclosure of this mortgage." All of these circumstances seem in the opinion of the court to lead to the conclusion, that it was manifest that it was the intention of the mortgagor to pass the entire estate. That the fact that it was executed in Indiana in a form which was there effectual to do this, was entitled to great weight. That the use of the word "mortgage" in the granting clause "was a fact of potent significance." That the meaning of this, is a grant for the security of a debt, and that it was unmistakably the intention of the grantor to do this, and that the security should abide until the debt was paid; and that this contemplated a sale of the property if the debt was not paid, and to this end, the sale of the complete title of the mortgagor.

None of these considerations apply to this case, and they are the principle, if not the only ones on which the court based its judgment. We see nothing in the language of this deed, which clearly and plainly expresses an intention to do more than to convey the property to the plaintiffs and their successors. They executed it in Ohio, which up to that time at least, was supposed to be governed in this respect by the

common law rule, it not having been changed by decision or statute, as in Indiana, and it was executed on a form from which the word "heirs," wherever it occurs in connection with the names of the grantees, is carefully erased, a fact perhaps not without significance, as showing that the conveyance by Sedam to these plaintiffs in this form, was done designedly, and not by mistake or oversight. It is true that the deed contains in other respects, all the statements and covenants usual in fee simple deeds with the exception that the *habendum* clause and the covenants are to the plaintiffs and their "successors," instead of "heirs." And it is expressly held in the case of *Ford* v. *Johnson*, 41 Ohio St., 366, which in effect, was an affirmance of the common law doctrine as being the law of Ohio, that where "in a deed of bargain and sale" the grant was, "unto the said Charles Cline, and to his lawful issue, to go to his surviving brother or brothers and to their heirs and assigns," and in which the *habendum* clause was, unto the said Charles Cline and to his lawful issue, to the "only proper use of the said Charles and his lawful issue, (as above mentioned,) forever." And the covenants of seizin, of quiet enjoyment, and against incumbrances were each with the said Charles Cline and his lawful issue, that Cline only took a life estate.

In view then of all the law upon this subject, it seem to us, that we are bound to hold that the rule to which we have referred, arbitrary and technical though it be, is the law of Ohio, and if further change or relaxation of its strictness is to be made, it should be done by the legislature, or the true state of the law be announced by the highest court of the state.

If the case were then to be decided by us upon this issue, our judgment would be that the plaintiffs took but a life estate; they are entitled however, to a decree finding the amount due from Sedam under this lease, and if not paid by a day to be named by the court,, that the interest of Sedam under it be sold to pay the same, but that they can only sell, and the purchaser can only take the leasehold estate during the life of the plaintiffs or of the survivor of them, and that at the death of such survivor the premises would revert to Sedam, if living, and if not, to his heirs or assigns, free and discharged from any liability to pay the $12,300.00.

But if it be true that a reply was required in this case, there was really no issue made for trial by the court. But as the case was heard as if an issue had been taken on the allegations of the cross-petitions, the court in furtherance of justice might still allow the reply to be filed. But in our view the claim of the plaintiffs is not one which is entitled to extraordinary indulgence at the hands of a court of equity. At the time of the transaction the property was worth $25,000.00 to $35,000.00. Its rental is $2,500.00 The value of the fee now is about $40,000.00. For this, Sedam has received but $12,300.00, on which he was bound to pay a yearly rental of $800.00, in addition to the taxes on the property. And if the claim of the plaintiffs be sustained, that sum is all that he or his family ever can receive for it from the plaintiffs. It was certainly a most improvident contract upon the part of Sedam and wife, and to allow it to stand, we must feel obliged by the law to do so. We therefore again venture to suggest to counsel, whether in view of all the circumstances of the case, without further stating what our judgment would be on the last point suggested, whether it would not be a fair and equitable arrangement to have this transaction held by consent of parties to be a

loan of money secured by the papers executed, and that a decree be made on this basis.

*Stephen Coles*, for Plaintiffs.

*Mallon, Coffey & Mallon*, for Defendants.