[Cite as *Hursey v. McPeek*, 2025-Ohio-5707.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID M. HURSEY, et al., | Case No. 2025 AP 03 0012 |
| Plaintiffs - Appellees | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Tuscarawas County, |
| JOSHUA McPEEK, et al., | Case No. 2023 CV 07 0498 |
| Defendants - Appellants | Judgment:   Reversed and Remanded |
| | Date of Judgment:  December 19, 2025 |

BEFORE: Andrew J. King; Robert G. Montgomery; David M. Gormley, Judges

APPEARANCES: Sean R. Scullin (Scullin & Cunning LLC), Boardman, Ohio, for Plaintiffs-Appellees; Cari F. Evans (Fischer, Evans & Robbins Ltd.), Canton, Ohio, for Defendants-Appellants.

*Gormley, J.*

{¶1}   Defendants Joshua and Haley McPeek (the McPeeks) appeal the trial court's finding that neither they nor plaintiffs David and Debbie Hursey (the Hurseys) are the current owners of mineral rights underlying a tract of land that John and Mary Ann Hursey (the elder Hurseys) conveyed by deed to their son David Hursey.  Because our reading of key language in the deed of conveyance signed by the elder Hurseys differs from the trial court's perspective on the issue, and because we find in that deed what we view as clear and unambiguous language reflecting the elder Hurseys' intent to create for themselves a life-estate interest in the mineral rights and also to convey a vested-remainder interest in those rights to their son David, we now reverse the judgment of the trial court and remand the case for further trial-court proceedings.

## The Key Facts and Procedural History

**{¶2}** Plaintiff David Hursey received an 86.738-acre tract of land from his parents, John and Mary Ann Hursey, under the terms of a deed that was executed by those elder Hurseys in January 2000 and was recorded the following month.

**{¶3}** That deed conveyed immediately to David Hursey the surface rights in the 86+ acres of land. In that same deed, though, the elder Hurseys, using the following language, retained — for the remainder of their lives — an interest in the coal, mineral, oil, and gas underlying that land:

**Reservation No. 1:**
RESERVATION OF MINERAL AND OIL AND GAS RIGHTS:
Reserved to the Grantors John L. Hursey, Sr. and Mary Ann Hursey, or to the survivor thereof, all coal, mineral, and oil and gas rights underlying the 86.738 acre tract. At the death of the last Grantor to survive, said reservation shall inure to the Grantee, his heirs, administrators or assigns.

**{¶4}** Five years later, David Hursey filed for bankruptcy. As part of that bankruptcy proceeding, a deed, which was signed by the bankruptcy trustee in March 2006 and pertained to the 86.738-acre tract of land, transferred David Hursey's ownership interest — along with the interest of his then-wife, who was also a debtor in the bankruptcy proceeding — to Joshua McPeek "[s]ubject to any and all . . . reservations . . . of record pertaining to the above-described tract of land . . . together with . . . all the estates which the said David M. . . . Hursey had at the time of the filing of the [bankruptcy] Petition . . . which [David M. Hursey] has or has power to convey or dispose of."

**{¶5}** Mary Ann Hursey died in September 2017, and John Hursey died in February 2019.

**{¶6}** Then in February 2023, Joshua and Haley McPeek — as husband and wife — entered into an agreement to lease the underground-commodity rights in question to

Reserve Energy Exploration Company. The following month, Joshua McPeek recorded an affidavit claiming that he was the owner of those rights and cited both the 2000 deed and the later-executed 2006 bankruptcy-trustee's deed that transferred to him David Hursey's rights in the 86.738-acre tract of land.

{¶7}   And now to this litigation: David and Debbie Hursey filed a declaratory-judgment action in the trial court to quiet title to the underground coal, mineral, oil, and gas rights, and they named Joshua and Haley McPeek — as well as other individuals who are no longer parties to the case — as defendants. The Hurseys' complaint in the lawsuit alleged that David Hursey, in 2006 (when both of his parents were still alive), held no transferrable interest in the underground commodities, and so any conveyance by the bankruptcy trustee of David's interest in the 86+ acres applied solely to the visible ground and not to the minerals and fuels buried down below. Joshua and Haley McPeek in turn filed counterclaims in the case, claiming that they were the rightful owners of the underground commodities because Joshua McPeek was an "assign" of David Hursey by virtue of the 2006 bankruptcy-trustee's deed.

{¶8}   The trial court — in ruling on cross motions for summary judgment — found that neither David and Debbie Hursey nor Joshua and Haley McPeek were the current owners of the underground commodity rights because the elder Hurseys had retained for themselves a fee-simple interest in those underground rights when they transferred their tract of land to David in 2000. The McPeeks now appeal that decision.

**The Scope of Our Review**

*Motions for Summary Judgment*

**{¶9}** An appellate court reviews with fresh eyes a lower court's decision to grant a motion for summary judgment. *McCord v. Ron Laymon Trucking Co.*, 2005-Ohio-4399, ¶ 19 (5th Dist.). Summary judgment should be granted only if it appears from the pleadings and other evidence in the case that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.* at ¶ 22; Civ.R. 56(C).

*Interpreting Written Instruments*

**{¶10}** The construction of written contracts and instruments of conveyance is a matter of law that receives a fresh-eyes review by an appellate court. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996). An appellate court may, therefore, substitute its interpretation of a written instrument's language for the reading of those same words by a trial court. *Mid-Ohio Coal Co. v. Brown*, 2018-Ohio-1934, ¶ 13 (5th Dist.).

**What the Two Recent *Peppertree Farms* Cases Tell Us (or Fail to Tell Us)**

**{¶11}** In their second assignment of error, the McPeeks argue that the trial court, relying on the Supreme Court of Ohio's decision in the first of what are known as the *Peppertree Farms* cases, erroneously concluded that the elder Hurseys intended to retain a fee-simple interest in the underground-commodity rights when the elder Hurseys transferred the 86+ acres of land to their son David in 2000. That 2022 *Peppertree Farms* decision, the McPeeks argue, is factually distinguishable because the language at issue in the deed from the year 2000 in this case differs from the language in the deeds at issue in *Peppertree Farms*.

**{¶12}** We begin our discussion of that argument with a short refresher course on some key property-law terms:

**{¶13}** A fee-simple interest is "the highest right, title and interest that one can have in land. It is the full and absolute estate in all that can be granted." *Masheter v. Diver*, 20 Ohio St.2d 74, 78 (1969). An interest in fee simple "entitles the owner to the benefits of that estate during his life and descending to her heirs, devisees, and legal representatives on her death." 31 C.J.S., Estates, § 14 (2025).

**{¶14}** A life estate, on the other hand, is "'an estate held only for the duration of a specified person's life.'" *Sullinger v. Reed*, 2021-Ohio-2872, ¶ 21 (3d Dist.), quoting *Black's Law Dictionary* (11th Ed. 2019). A tenant holding a life estate has the right to the current possession and use of the property. *Brown v. Arnholt*, 2016-Ohio-5741, ¶ 26 (5th Dist.). "[A] life estate is created by language demonstrating an intent to grant the right to possess, use, and enjoy the property during life." 31 C.J.S., Estates, § 38 (2025). When a life estate has been created, the fee — that is, the inheritable interest in the property — vests in the remainderman, not the life tenant. *Guida v. Thompson*, 80 Ohio Law Abs. 148, 158 (C.P. 1957).

**{¶15}** Prior to 1925, if an owner of real property in Ohio wanted to convey by deed a fee-simple interest — rather than conveying to the grantee a mere life estate — the common law required that the deed of conveyance signed by that property owner had to include so-called "words of inheritance" indicating that the estate transferred was absolute. *Peppertree Farms, L.L.C. v. Thonen*, 2022-Ohio-395, ¶ 16 (*Peppertree Farms I*). And, of course, "words of inheritance" were long understood in the common law to mean a phrase such as "to X and his heirs" in the deed. *See Stephenson v. Sedam*, 5

Ohio C.D. 609, 613 (1888) ("to create a fee simple estate by deed, the word 'heirs' is indispensable, except in the grant to corporations, where the word 'successors' though not essential, is usually substituted"); *Ford v. Johnson*, 41 Ohio St. 366, 367 (1884) ("The elementary authorities uniformly hold that the word *heirs* is indispensable to the creation by deed . . . in fee simple"); *Vanhorn's Lessee v. Harrison*, 1 U.S. 137, 139 (Pa. 1785) ("at common law, though the intent of the parties be ever so fully expressed and manifested in a grant or other deed, without the word heirs, a fee shall not pass").

**{¶16}** The common law recognized, too, a distinction between an "exception" and a "reservation" when a grantor sought not to convey a fee simple but instead intended to retain some interest in the property even after the conveyance. *Peppertree Farms I* at ¶ 17. The Supreme Court of Ohio explained that distinction between an exception and a reservation in the two *Peppertree Farms* cases that were decided on the same day in 2022.

**{¶17}** Both *Peppertree Farms* cases dealt with deeds executed prior to 1925, and the multiple deeds at issue in those cases included language reflecting an intent on the part of the grantors to retain an interest in oil and gas rights beneath the land conveyed. A common-law reservation was created, the court explained, when "'an estate [was] granted and at the same time some new right or privilege [was] reserved out of it to the grantor.'" *Peppertree Farms I* at ¶ 17, quoting *Gill v. Fletcher*, 74 Ohio St. 295, 304 (1906). Because such a conveyance created a new property right that the grantor did not already own in fee simple before the conveyance was made, words of inheritance were required for the grantor to retain more than a life estate in the reserved interest. *Peppertree Farms, L.L.C. v. Thonen*, 2022-Ohio-396, ¶ 3 (*Peppertree Farms II*).

{¶18}  The purpose of a common-law exception, on the other hand, was to "except or exclude from the operation of the conveyance some part of the thing or things" being transferred.  *Peppertree Farms I* at ¶ 18.  Words of inheritance were not necessary to make the excepted property inheritable because the grantor already owned the interest in fee simple before the conveyance.  *Id.*  That distinction was important, then, in determining property interests under the common law when the conveyance language lacked words of inheritance.

{¶19} The *Peppertree Farms I* case dealt with two different deeds — both executed prior to 1925 — that conveyed, at different times, the same two tracts of land. Each of the grantors retained an interest in the royalties from the oil and gas underneath the land.  The first deed, executed by W.T. Fleahman, included a provision that he "except[ed] and reserve[d] from th[e] deed the one half of the royalty of the oil and gas under the . . . real estate," and the second deed, executed several years later by Mary Fleahman, included a provision that certain portions of the oil and gas royalties were "reserved and [were] not made a part of th[e] transfer."  *Id.* at ¶ 23-24.

{¶20}  The court was tasked with determining whether those two provisions were, on the one hand, reservations that retained for the grantors mere life estates because the deeds contained no words of inheritance or, on the other hand, exceptions to the conveyance that did not require words of inheritance and reflected an intent on the part of the grantors to retain an inheritable fee-simple interest in the royalties. Id. at ¶ 22.  The court concluded that, because the oil and gas were already in existence at the time of the conveyance, the grantors in each deed held a fee-simple interest that they had excepted

from the transfer of real estate, and words of inheritance were therefore unnecessary for the grantors to retain more than a life-estate interest. *Id*. at ¶ 23-24.

{¶21} The year 1925 is significant in Ohio real-property law because it was then that the General Assembly enacted G.C. 8510-1 and abrogated the common-law requirement that words of inheritance were necessary to convey a fee-simple estate. Now codified at R.C. 5301.02, that provision tells us that "[t]he use of terms of inheritance or succession are not necessary to create a fee simple estate" and every grant or conveyance "shall convey . . . the entire interest which the grantor could lawfully grant . . . unless it clearly appears by the deed . . . that the grantor intended to convey or mortgage a less[er] estate." The court in *Peppertree Farms I* explained that, as a result, "the distinction between a reservation and an exception no longer carries the same historical importance in Ohio that it did prior to 1925." *Peppertree Farms I* at ¶ 21.

{¶22} So where does that primer on property law and on the common-law distinction between a reservation and an exception lead us in this case ?

{¶23} Well, the trial court in this case, rightly looking for the intent of the elder Hurseys in the actual language that they used in the so-titled "Reservation No. 1" in the 2000 deed in question, concluded that the elder Hurseys "clearly intended to exclude from the conveyance to David M. Hursey" all of the coal, mineral, oil, and gas rights underlying the 86.738-acre tract of land. The trial court found, too, that the deed's language concerning the underground-mineral rights met the requirement to "be an exclusion, rather than a reservation." That meant, in the trial court's view, that the elder Hurseys retained for themselves a fee-simple interest — rather than a mere life estate — in the underground-commodity rights, and David Hursey therefore had no remainder interest in

those rights that he could convey to Joshua McPeek when McPeek, in 2006, acquired the 86+ acres from the bankruptcy trustee who sold Hursey's assets.

**{¶24}** Admittedly, the ancient and at-times inscrutable terms that so often appear in property-law cases can be perplexing, but we say with all respect to the trial court that that court's reliance on *Peppertree Farms I* seems off the mark. The distinction between a reservation and an exception mattered to the Supreme Court in that first *Peppertree* decision for two key reasons: (1) the deeds at issue in that case had been executed before 1925, and (2) the grantors had "except[ed] and reserve[d]" (in one deed) or simply "reserved" (in the other) certain mineral rights for themselves while saying nothing about their intent concerning the disposition of those mineral rights after their lifetimes. *Peppertree Farms I* at ¶ 22-24.

**{¶25}** Our case is different on both of those key points. While the elder Hurseys did, in the 2000 deed to their son David, "[r]eserve[ ]" for themselves "all coal, mineral, and oil and gas rights" underneath the 86+ acres of land that they conveyed to David in that deed, they also — in the very next sentence — wrote that, "at the death of the last Grantor" to survive, those mineral and commodity rights were to "inure to the Grantee," David Hursey and to "his heirs." Nothing like that additional sentence appeared in the *Peppertree Farms I* deeds, and so of course that case's holding tells us nothing about how we should interpret a deed like this one that does contain that key second sentence.

**{¶26}** With that understanding, then, we turn, with fresh eyes, to examine not just the first but instead both sentences in the elder Hurseys' so-called "Reservation No. 1" in the deed that they signed in the year 2000.

**<u>The Two Sentences in "Reservation No. 1" Together Indicate that the Elder Hurseys Intended to Create a Life-Estate Interest for Themselves in the</u>**

**Underground Commodities and Intended, Too, to Give to their Son David a Vested Remainder Interest in those Commodities**

{¶27}  In their first assignment of error, the McPeeks argue that the trial court erred by ignoring what they describe as clear and unambiguous language in "Reservation No. 1," which, according to the McPeeks, reflected the elder Hurseys' intent to retain a life-estate interest in the mineral rights while granting a remainder interest in those rights to David Hursey.

{¶28}  What matters in determining the meaning of any real-property conveyance are the grantor's own words in the deed in question.  *Mid-Ohio Coal Co.*, 2018-Ohio-1934, at ¶ 13 (5th Dist.) ("Written instruments 'are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language'"), quoting *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus; *Am. Energy Corp. v. Datkuliak*, 2007-Ohio-7199, ¶ 50 (7th Dist.) ("A court cannot interpret the parties' intent in a manner contrary to the clear, unambiguous language of the deed").  And the words and phrases in a written instrument should not be read in isolation but should instead be considered as a whole.  *Dominish v. Nationwide Ins. Co.*, 2011-Ohio-4102, ¶ 8; *Skivolocki* at 250–251 (finding the intent of the parties by "reading the instrument as a whole").

{¶29}  When the terms used by the parties in a written instrument are clear and unambiguous, a court "cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."  *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978).  A court should not consider extrinsic evidence in its effort to give effect to the parties' intent unless the language is unclear or ambiguous. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132 (1987).

**{¶30}** Again, the language from "Reservation No. 1" in the 2000 deed at issue in the case is this:

**Reservation No. 1:**
RESERVATION OF MINERAL AND OIL AND GAS RIGHTS:
Reserved to the Grantors John L. Hursey, Sr. and Mary Ann Hursey, or the survivor thereof, all coal, mineral, and oil and gas rights underlying the 86.738 acre tract. At the death of the last Grantor to survive, said reservation shall inure to the Grantee, his heirs, administrators or assigns.

**{¶31}** We see that language as a clear and unambiguous expression by the elder Hurseys of their intent that the underground-commodity rights from which they apparently hoped to benefit during their lifetimes would pass to the grantee — their son David Hursey — once both of them had died. Though the conveyance does not use the term "life estate" to describe the rights that the elder Hurseys retained for themselves while either one of them was still alive, we view the second sentence as a clear statement that they intended for David Hursey to own the underground-commodity rights upon their deaths.

**{¶32}** The combined effect of the two sentences in "Reservation No. 1" is this: the elder Hurseys intended to retain a life estate in the commodities beneath the land in question, and they named their son David as the holder of a vested remainder interest in that life estate. The trial court's view that "Reservation No. 1" reflected an intent on the part of the elder Hurseys to retain for themselves a fee-simple interest in the underground commodities ignores, in our view, the reservation's second sentence.

**{¶33}** In support of their contrary view here, the Hurseys, citing *Bragdon v. Carter*, 2017-Ohio-8257 (4th Dist.), argue that the creation of a life estate must be "clearly expressed." Absent explicit terms such as "life estate" and "remainder," they contend, the provision must be read as a retention by the elder Hurseys of a fee-simple interest in the underground commodities. Notably, though, in *Bragdon*, the court found that the

language at issue in that case did not contain a remainder provision and did not "use . . . *any other language indicating that a life estate was intended*." (Emphasis added.) *Bragdon* at ¶ 13.

**{¶34}** Our case is different. Though, to be sure, "Reservation No. 1" does not contain the explicit terms "life estate" or "remainder," that provision's second sentence contains what we view — in the words of *Bragdon* — as "other language" indicating that the elder Hurseys did in fact intend to create a life-estate interest in the underground commodities and intended, also, after their deaths, for that interest to, as Reservation No. 1 says, "inure to the Grantee," David Hursey and to "his heirs." Any other reading of the two sentences in Reservation No. 1 fails to hold true to what we view as the elder Hurseys' clearly expressed and unambiguous intent.

**{¶35}** The McPeeks' first and second assignments of error are sustained.

## David Hursey's Interest Had Vested and Was Transferrable When the Trustee's Deed Was Executed

**{¶36}** The McPeeks argue in their final assignment of error that the trial court should have held that Joshua McPeek acquired, through the 2006 bankruptcy-trustee's deed, the remainder interest then held by David Hursey in the underground commodities. They argue, too, that the trial court erred by invalidating the affidavit signed and recorded by Joshua McPeek in 2023 in which he claimed to be the commodities' owner. In keeping with our analysis above, we agree.

**{¶37}** David Hursey held, starting in 2000, a vested remainder interest in the underground minerals and fuels described in Reservation No. 1. We readily reach that conclusion by looking to the second sentence in that reservation and by applying the long-accepted maxim that "[t]he law favors the vesting of estates at the earliest possible

moment." *Ohio Natl. Bank of Columbus v. Boone*, 139 Ohio St. 361, 365 (1942). *See also In re Iles' Will*, 85 Ohio Law Abs. 516, 175 N.E.2d 781, 784 (C.P. Probate 1960) ("when there is a person in being who would have the right to possession immediately upon the termination of the intervening estate, the remainder is vested"); *Miller v. Berk*, 14 Ohio Law Abs. 23, 26 (9th Dist. 1933) ("It is settled in Ohio that a remainder is vested when there is a present fixed right to a future enjoyment and there is a certain and definite person in being who would have the right of possession immediately upon the termination of the intervening estate which supports it"); *id.* ("It is also settled that where a remainder is otherwise vested, it does not become a contingent remainder because it is liable to be divested by a subsequent event, such as the death of the remainderman before that of the life tenant"); *Tax Comm. of Ohio v. Oswald*, 109 Ohio St. 36, 52 (1923) ("A remainder is *vested* when there is a present fixed right to future enjoyment").

**{¶38}** And David Hursey's vested remainder interest was transferrable by him at any time under R.C. 2131.04, which provides that vested remainders are "descendible, devisable, and alienable in the same manner as estates in possession." *See also In re Sargent*, 337 B.R. 661, 666 (Bankr.N.D.Ohio 2006) (citing that statute and explaining that "[u]nder Ohio law, a remainderman interest is fully alienable").

**{¶39}** Because David Hursey's interest in the underground commodities was in fact transferred by him — or by the bankruptcy trustee on his behalf — in 2006 when the land that David had received from his parents in 2000 was sold to Joshua McPeek, it was McPeek, in our view, who then stepped into the shoes of David Hursey. From that time forward, it was Joshua McPeek — along with his wife Haley McPeek once the two of them

were married — who was entitled to ownership of the underground commodity rights upon the death of the last of the elder Hurseys. Again, any contrary reading of the language at issue fails to adhere to the express wishes of the elder Hurseys in the 2000 conveyance.

{¶40} The McPeeks' third assignment of error is sustained.

{¶41} In short, the plain meaning of the language used by John and Mary Ann Hursey when they conveyed land to their son David in the year 2000 shows their intent to retain only a life estate in the commodities under that land and to convey to David at that time a vested remainder interest in those underground minerals and fossil fuels. The judgment of the Court of Common Pleas of Tuscarawas County finding otherwise is reversed, and the case is remanded for further proceedings in that court. Costs are to be paid by appellees David and Debbie Hursey.

By: Gormley, J.;

King, P.J. concurs, and

Montgomery, J. dissents.


*Montgomery, J.* dissents,

{¶42} I respectfully dissent from the majority's decision.

{¶43} When reviewing a written instrument, including deeds, an appellate court may interpret the language on its own, substituting its interpretation for that of the trial court. *Children's Medical Center v. Ward*, 87 Ohio App.3d 504 (2d Dist. 1993). Written instruments "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Mid-Ohio Coal Co. v. Brown,* 2018-Ohio-1934, ¶ 13 (5th Dist.), quoting *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244 (1974),

paragraph one of syllabus. If the terms of the written instrument are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set forth in the written contract. *Porterfield v. Bruner Land Co., Inc*., 2017-Ohio-9045, ¶ 16 (7th Dist.), citing *Alexander v. Buckeye Pipe Line*, 53 Ohio St.2d 241, 246 (1978); *Saunier v. Stark Truss Co.,* 2016-Ohio-3162, ¶ 12 (5th Dist.).

{¶44} "The principles of deed construction dictate that a court presumes that a deed expresses the intentions of the grantor and grantee at the time of execution. ". . . A court cannot interpret the parties' intent in a manner contrary to the clear, unambiguous language of the deed . . .." *Mid-Ohio Coal Co. v. Brown,* 2018-Ohio-1934, ¶ 13 (5th Dist.), quoting *American Energy Corp. v. Datkuliak*, 2007-Ohio-7199, ¶ 50 (7th Dist.). "When construing a deed, a court must examine the language contained within the deed, the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves failed to do." *Johnson v. Consol. Coal Co.*, 2015-Ohio-2246, ¶ 15 (7th Dist.), quoting, *McCoy v. AFTI Properties, Inc.*, 2008-Ohio-2304, ¶ 8 (10th Dist.).

{¶45} The 2000 Deed contained the following language:

**RESERVATION NO. 1:**

RESERVATION OF MINERAL AND OIL AND GAS RIGHTS:
Reserved to the Grantors John L. Hursey, Sr. and Mary Ann Hursey, or the survivor thereof, all coal, mineral, and oil and gas rights underlying the 86.738 acre tract. *At the death of the last Grantor to survive, said reservation shall inure to the Grantee, his heirs, administrators or assigns. (emphasis added).*

{¶46} Appellants' first and second assignments of error argue the trial court erred by not finding that the Reservation above unambiguously created a life estate to the

Mineral rights in favor of John and Mary Ann Hursey, with a remainder interest in favor of their son David. Appellants argue that the July 5, 2022, Affidavit releasing the "life estate," signed by Plaintiffs, as well as the 2013 stipulation of agreement with BP, demonstrates the parties' intent regarding the 2000 Deed. Thus, upon the death of John Hursey in 2019, the remainder interest and ownership in the Mineral rights vested in Appellants by virtue of the Trustee's Deed. Appellants further maintain that the trial court failed to address the words of inheritance and its impact on the instant dispute and further, that equity does not favor Plaintiffs' current position because it is inconsistent with prior arguments. For the reasons set forth below, I would have concluded that the 2000 Deed clearly retains the grantors' fee simple interest in the Mineral rights and was an exception as a matter of law.

## Fee Simple Interest v. Life Estate

{¶47} A fee simple interest "is the highest right, title and interest that one can have in land. It is the full and absolute estate in all that can be granted." *Masheter v. Diver,* 20 Ohio St.2d 74, 78 (1969). "A title in fee simple is the highest quality of estate in land known to the law. It is the greatest estate and most extensive interest that a person can possess in landed property, being an absolute estate in perpetuity." 31 *C.J.S.* Estates § 14. It entitles the owner to the benefits of that estate during his or her life, including the right to use, sell, lease, or destroy the property, and passes to the heirs, devisees, and legal representatives upon the owner's death. *Id.* Further, when an individual or entity owns land in fee simple, they have unrestricted ownership to both the surface rights and the mineral rights below the surface. Thus, minerals, such as oil and gas, are considered

realty unless and until physically severed from the land. *See Kelley v. Ohio Oil Co.*, 57 Ohio St. 317 (1897); *Pure Oil Co. v. Kindall*, 116 Ohio St. 188 (1927).

**{¶48}** For example, where the owner of a fee simple estate grants title to the surface lands to another and retains ownership in one half of the minerals beneath the surface, the grantor retains a *fee simple estate* in that other half of the minerals. *Lighthorse v. Clinefelter*, 36 Ohio App. 3d 204, 205-06 (9th Dist. 1987); *see also* 38 *Am. Jur. 2d* Gas and Oil § 316. (noting that where there is no proof of severance, the court may presume that the person in possession of the surface is also in possession of the underlying gas and oil).

**{¶49}** Conversely, a "life estate" is a freehold estate which is held by the tenant for his or her own life and is typically created with use of words such as "to A for life" or "for use during her lifetime". *Bush v. Bush*, 1988 WL 42481, at *2 (5th Dist.), *cause dismissed*, 38 Ohio St.3d 715 (1988). The life tenant does not "own" the property but is entitled to full use and possession subject to the limitation that the estate not be permanently diminished in value. *Id*. "[I]n life estates the fee is vested in the remainderman and not in the life tenant." *Guida v. Thompson,* 80 Ohio Law Abs. 148 (Tuscarawas County C.P. 1957) (noting the difference between life estate and fee simple, "an absolute fee simple estate is the entire interest in the land, with infinite duration, and inheritable by the collateral as well as the lineal heirs of the person having such estate").

**{¶50}** At common law, and prior to 1925 in Ohio, to properly convey land in fee simple rather than a life estate, the deed was required to include words of inheritance and state that the property transfer was absolute. *Peppertree Farms, L.L.C. v. Thonen,* 2022-Ohio-395, ¶¶ 16, 17 ("*Peppertree I*"), citing Kuntz, *A Treatise on the Law of Oil and Gas*,

§ 14.2. Questions often arose when the grantor sought to retain an interest in the property being conveyed, but did not include words of inheritance, namely whether the interest retained was a reservation or an exception. *Peppertree I*, ¶ 17, citing *Kuntz*, supra. If the interest was an exception, the interest was inheritable even if the deed did not include any words of inheritance.

### Reservations v. Exceptions in Deeds

{¶51} Recently, the Ohio Supreme Court was called upon to determine whether certain deeds executed prior to 1925 resulted in life estates or fee simple interests. *Peppertree I*, ¶ 3. The Court stated it must decide whether "[a]s a matter of law, prior to 1925 and thereafter, an oil and gas severance using the words "excepts and reserves" or "reserved and is not made part of this transfer" in an instrument conveying real property is the retention of an existing interest, not the creation of a new property interest." *Id.*, ¶ 15.

{¶52} In discussing common law principles, the Court explained that "[a] reservation was created in a conveyance when 'an estate [was] granted and at the same time some new right or privilege [was] reserved out of it to the grantor.' " *Peppertree I*, ¶ 17. In other words, a reservation created a new property right in favor of the grantor, and because that new interest *had not been owned by the grantor* in fee simple absolute *before the conveyance*, words of inheritance were required to make it inheritable. *Id.*, ¶ 2. Examples of reservations include the right to revoke the deed or a right to repurchase the property. *Id.*, ¶ 17, citing 4 Tiffany, *Real Property*, § 972 (3d Ed.1939).

{¶53} On the other hand, "[t]he purpose and effect of an exception in a conveyance is to except or exclude from the operation of the conveyance some part of

the thing or things covered, as when one conveys a piece of land, excepting a certain part thereof, or the houses thereon, it being properly always a thing actually existent." *Peppertree I*, ¶ 18. If the grantor owned the interest prior to executing the deed, and merely retains that interest after conveying the remaining property, the grantor has "excepted" that interest and retains fee simple ownership. *Id.*; *Talbot v. Ward*, 2017-Ohio-9213, ¶ 62 (7th Dist.). If it is a true exception, property owned in fee simple absolute is inheritable and words of inheritance are not needed to retain more than a life estate in the excepted interest. *Peppertree I*, ¶¶ 18, 20.

{¶54} Importantly, these rules apply regardless of whether the term reservation or exception is employed. *Id.* ("Although the terms "reserve" and "except" are often now used interchangeably, the term "except" means to retain an existing right, while the term "reserve" means to create a new right."), citing *Clark v. Guest*, 54 Ohio St. 298, 303-04 (1896); *Crum v. Yoder*, 2020-Ohio-5046, ¶ 81 (7th Dist.) (holding that the interest granted was an exception regardless of the terms used; the grantors clearly excepted part of the land being transferred by retaining the minerals already in existence as "corporeal parts of the property" and were already owned by the grantors). These principles have been applied in Ohio for over 100 years. *Sloan v. Lawrence Furnace Co.,* 29 Ohio St. 568, 569 (1876). In *Sloan*, the Court stated:

> It is true, the intention of the grantor was expressed by the word 'reserving,' which technically saves only a right to some use or benefit in the thing granted, instead of excluding or excepting from the operation of the deed a part of the thing embraced in the general description. But while this technical distinction between a reservation and an exception may exist, it is quite clear, from the subject-matter, that 'reserving' was here used in the sense of 'excepting.' The 'minerals underlying the soil' being a part of the land described in the deed, and not a mere future benefit or interest therein, there can be no doubt the grantor intended to retain the fee-simple title to the minerals.

*Sloan,* at 569.

**{¶55}** Indeed, " 'coal, oil, timber, gas, and minerals are all corporeal things already in existence; thus, they squarely meet the requirements to be an exception, rather than a reservation.' " *Peppertree I*, ¶ 18*,* quoting 4 Tiffany, *Real Property*, § 972. As such, the *Peppertree* Court held that because in both deeds [executed prior to 1925], the oil and gas rights were in existence and owned by the respective grantors at the time of conveyance, the grantors held a fee-simple interest that was inheritable. *Peppertree I,* ¶ 4; *accord Goble v. CNX Gas Company, LLC*, 2023-Ohio-3603, ¶ 15 (7th Dist.) (defining a reservation as a "creation of a new right or interest (such as an easement) by and for the grantor, in real property being granted to another"; and an exception is the retention of an existing right or interest in real property being granted to another); *Bath Twp. v. Raymond C. Firestone, Co*., 140 Ohio App.3d 252, 259 (9th Dist. 2000) (concluding that when the grantor reserves "all oil and gas rights," the grantor effectively reserves the entire oil and gas estate and the rights related thereto; the deed clearly reserved to the grantor all oil and gas rights, including rights of ownership of the oil and gas under the entire deeded property); *see also Kuntz,* supra.

**{¶56}** In *Peppertree II*, the Ohio Supreme Court focused solely on whether the interest reserved was already in existence at the time of the transfer or conveyance, or whether the grantor created the interest for the first time within the reservation. *See Peppertree Farms, L.L.C. v. Thonen*, 2022-Ohio-396 ("*Peppertree II*"), ¶ 22 ("The oil and gas and his interest in it existed at the time of the transaction, and he owned that interest in fee simple with rights of inheritance. Therefore, because the conveyance did not create a new property right that reverted back from the grantee, words of inheritance were not

necessary for Jones to retain more than a life estate in the share of the oil and gas that he owned.")

**{¶57}** The *Peppertree* cases mandate that the determinative factor is whether the interest granted was owned at the time the deed was executed. In *Goble*, the Seventh District followed suit and held, "[w]here a grantor of an interest in real property owned the interest prior to executing a deed, and merely retained this interest after conveying the bulk of the property, the grantor has excepted that interest and retains fee simple ownership." *Goble*, ¶ 17. Therein, the deed – executed prior to 1925 - stated that "grantors hereby reserve an equal one-half interest in the oil and gas lying in and under the above-described premises." Because the grantors already owned 100% of the oil and gas rights in the property prior to the conveyance, they necessarily retained one-half interest after granting the other half interest.

**{¶58}** The court held the language was an expression of the grantors' retention of their fee simple interest, an exception, rather than a life estate. *Id.*, at ¶¶ 25-26. "Without question, the grantors enjoyed the right to these minerals in fee simple prior to executing the deed in question," and they were simply keeping for themselves all the rights to the specific minerals (including oil, gas, and coal) that they enjoyed prior to the transfer of the remainder of the property. *Id.* Thus, the grantors "excepted" the oil and gas rights in the conveyance and retained their fee simple interest. *Id.*; *see also Mid-Ohio Coal*, supra.

### The 2000 Deed Clearly Retains the Grantors' Fee Simple Interest in the Mineral Rights

**{¶59}** R.C. 5301.02 (formerly G.C. 8510-1) codified the common law such that words of inheritance are not required to retain a fee simple interest when conveying

property.[1]  R.C. 5301.02 instructs that every grant or conveyance shall convey "the entire interest which the grantor could lawfully grant" <u>unless</u> the deed clearly demonstrates the grantor intended a lesser interest.  Here, as set forth above, John and Mary Ann Hursey conveyed approximately 86.738 surface acres to their son, Plaintiff David Hursey.  There is no dispute that John and Mary Ann Hursey owned the subject tract of land, as well as all rights underlying the tract of land, in fee simple at the time they executed the 2000 Deed.  See *Mid-Ohio Coal,* ¶ 18 (finding that the parties to the action did not dispute the grantors in the land held a fee simple, and thus, their title included gas, oil, coal, stone, water, and any mineral under the ground as well as the right to use or convey the property).  Per R.C. 5301.02, grantors conveyed their fee simple interest to Plaintiffs unless the deed clearly provides otherwise.  Here, it does.  The grantors expressly included "Reservation No. 1."

**{¶60}** A reading of RESERVATION NO. 1 unambiguously demonstrates in the first sentence that John and Mary Ann Hursey, as the Grantors, reserve to themselves "all coal, mineral, and oil and gas rights underlying the 86.738 acre tract."  Because they owned the interest in the Mineral rights at the time they executed the Deed with reservation, and in accordance with well-established Ohio law, I would conclude the reservation is clearly an exception from the conveyance.  As such, the grantors retained

---

[1] R.C. 5301.02 currently provides:

> The use of terms of inheritance or succession are not necessary to create a fee simple estate, and every grant, conveyance, or mortgage of lands, tenements, or hereditaments shall convey or mortgage the entire interest which the grantor could lawfully grant, convey, or mortgage, unless it clearly appears by the deed, mortgage, or instrument that the grantor intended to convey or mortgage a less estate.

their fee simple interest in the Mineral rights. The Court should not rewrite the Deed and put words into an instrument which the parties themselves failed to do.

**{¶61}** Appellants argue that the words of inheritance in the second sentence, the Affidavit purporting to release a life estate, and the stipulation of interest agreement for the purpose of the lease with BP, demonstrate the grantors' intent to create a life estate with remainder. I disagree. The documents are not only insufficient to overcome the plain language of the 2000 Deed and established Ohio law, same were executed years after the conveyance. Further, it seems that the documents were prepared and executed to satisfy the specific lessee at the time, namely BP in 2013 when the stipulation of interest agreement was signed, and Reserve Energy in 2022 when the Affidavit was signed.

**{¶62}** Moreover, although the words of inheritance did not effectively transfer the Mineral rights on death, due to the effective date of Ohio's Transfer on Death statute, the grantors' retention of its fee simple interest in the Mineral rights remains unchanged.[2] Had this same Deed been executed prior to 1925, the words of inheritance would conclusively establish a retention of their fee simple interest, contrary to Appellants' position that the language somehow created a remainder interest.

**{¶63}** If John and Mary Ann Hursey truly intended to create a life estate in the Mineral rights, they could have easily stated that they "reserve a life estate in the minerals and oil and gas." They did not. Less than three years prior to the 2000 Deed, on

---

[2] R.C. 5302.22 is Ohio's Transfer-On-Death Deed statute. This statute went into effect on August 29, 2000 (amended effective December 28, 2009). It provides that a deed conveying any interest in real property creates a present interest as sole owner or as a tenant in common in the grantee and creates a transfer on death interest in the beneficiary or beneficiaries. Upon the death of the grantee, the deed vests the interest of the decedent in the beneficiary or beneficiaries.

September 3, 1997, the same grantors and the same attorney executed a Deed conveying a separate tract of land to a different son and expressly retained a life estate. The 1997 Deed states: "Grantors JOHN L. HURSEY, SR. and MARY ANN HURSEY, hereby reserve unto themselves a Life Estate for their joint lives on the property." A party's subsequent belief regarding the legal meaning and effect of a deed is inconsequential. See *Mid-Ohio Coal*, ¶ 13; *Porterfield*, ¶ 16; *Johnson,* ¶ 15 *McCoy*, ¶ 8; (the question is not what the parties meant to say, but the meaning of what they did say at the time of execution, as courts cannot put words into an instrument which the parties themselves failed to do). Accordingly, I would rule that Appellants' first and second assignments of error should be overruled.

{¶64} In the third assignment of error, Appellants maintain that the trial court erred in declaring that the Trustee's Deed did not convey the remainder interest in the Mineral rights to Appellants, and that the affidavit of ownership filed by Appellants should be terminated. Again, I would disagree. Because John Hursey retained his fee simple interest in the Mineral rights even upon his death, the trial court properly concluded that said rights belong to his estate, not Plaintiffs. As such, the Mineral rights were not properly part of Plaintiffs' bankruptcy estate because David Hursey did not own the Mineral rights at the time Trustee's Deed was executed. Accordingly, I would rule that Appellants' third assignment of error should be overruled.

{¶65} I would rule that the judgment of the Tuscarawas County Court of Common Pleas should be Affirmed. Thus, I respectfully dissent.